UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

|  |  |
|---|---|
| ENG BOCK CHIA, RUI GUI WU, YUE MING LIN, GRACE WU, CINDY LIN, XIN QIANG YU, GUI XIANG DONG, CHIN KOK HING, and WAI HO NG,<br><br>Plaintiffs,<br><br>- against -<br><br>520 ASIAN RESTAURANT CORP. d/b/a CHEF YU, 5127 RESTAURANT CORP. d/b/a GINGER'S, TUNG SHENG YEH, STEVEN C.J. TANG, ALICE TANG, JANE DOE aka "WINNIE," TEO SU JIN,  BENNY CHEONG, and/or other persons or entities affiliated with or controlled by 520 ASIAN RESTAURANT CORP. d/b/a CHEF YU and/or 5127 RESTAURANT CORP. d/b/a GINGER'S and/or TUNG SHENG YEH, STEVEN C.J. TANG, ALICE TANG, JANE DOE aka "WINNIE," TEO SU JIN,   and/or BENNY CHEONG, individually,<br><br>Defendants. | Docket No.:  17-cv-5885<br><br>**COMPLAINT** |

Plaintiffs, by their attorneys, Virginia & Ambinder, LLP and the Urban Justice Center, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

### PRELIMINARY STATEMENT

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, and 207, New York Labor Law ("NYLL") § 190 *et seq.*, § 663, § 651 et seq., and § 650 et seq.; 12 New York Codes, Rules, and Regulations ("NYCRR") § 146; on behalf of Plaintiffs who furnished labor to Defendants 520 ASIAN RESTAURANT CORP. d/b/a CHEF YU, 5127 RESTAURANT CORP. d/b/a GINGER'S, (collectively "Defendant Restaurants"), TUNG SHENG YEH, STEVEN C.J. TANG, ALICE TANG, JANE DOE aka "WINNIE," TEO SU JIN,  BENNY

CHEONG (collectively "Individual Defendants"), and/or other persons or entities affiliated with or controlled by Defendant Restaurants and/or the Individual Defendants (Individual Defendants and Defendant Restaurants, all collectively referred to as "Defendants"), individually, to recover unpaid minimum wages, overtime wages, "spread of hours" compensation, unlawfully retained tips and gratuities, unlawful deductions, penalties for failure to provide legally-required notices, uniform maintenance pay, nad costs of unreimbursed uniform expenses.

2.      Defendants operate a single integrated business, consisting of two restaurants known as Chef Yu and Ginger's, which are businesses engaged in the food service and restaurant industry.

3.      Throughout Plaintiffs' employment, Defendants' single integrated enterprise has jointly employed Plaintiffs, who performed work at Defendants' Restaurants.

4.      The enterprise is centrally controlled by Individual Defendants Tung Shen Yeh, Steven C.J. Tang, Alice Tang, and Jane Doe aka "Winnie."  These Individual Defendants own, manage, financially control and oversee operations at Defendants' Restaurants.

5.      Plaintiffs perform the same basic job duties and are subject to substantially similar employment policies and practices by Defendants at Defendant Restaurant locations.

6.      Throughout the time relevant to the claims herein and, upon information and belief, continuing through the present, Defendants did not monitor and/or record the actual hours worked by Plaintiffs.

2

7.     Under the direction and control of Individual Defendants, Restaurant Defendants instituted the practice of depriving their employees of minimum wages, overtime wages, spread of hours compensation, uniform maintenance pay, unreimbursed costs of required uniforms, and failing to remit all tips and gratuities as required by federal and state law.

8.     Defendants failed to provide proper wage notices and wage statements to Plaintiffs in violation of state law.

9.     Plaintiffs have initiated this action seeking all compensation, including minimum and overtime compensation, "spread of hours" compensation, uniform maintenance pay, unreimbursed costs of required uniforms, and unpaid tips and gratuities that they were deprived of, as well as damages for Defendants' failure to provide Plaintiffs with accurate wage notices and wage statements, plus interest, damages, and attorneys' fees and costs.

## **JURISDICTION**

10.     Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331, 1332, and 1337.

11.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under New York Labor Law because those claims arise out of the same common nucleus of operative fact as the federal claim and are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.   The statute of limitations under FLSA, 29 U.S.C. § 255(a), for willful violations is three (3) years.

12.     The statute of limitations under NYLL § 198(3) is six (6) years.

## VENUE

13.     Venue is proper within this District under 28 U.S.C. § 1391(b) because Defendants regularly conduct business within the Southern District of New York and because the majority of the events giving rise to this litigation occurred in the Southern District of New York.

## THE PARTIES

14.     Plaintiff Eng Bock Chia is an individual and resident of Queens, New York.

15.     Plaintiff Rui Gui Wu is an individual and resident of Brooklyn, New York.

16.     Plaintiff Yue Ming Lin is an individual and resident of Queens, New York.

17.     Plaintiff Grace Wu is an individual and resident of Brooklyn, New York.

18.     Plaintiff Cindy Lin is an individual and resident of Queens, New York.

19.     Plaintiff Xin Qiang Yu is an individual and resident of Brooklyn, New York.

20.     Plaintiff Gui Xiang Dong is an individual and resident of Brooklyn, New York.

21.     Plaintiff Chin Kok Hing is an individual and resident of Queens, New York.

22.     Plaintiff Wai Ho Ng is an individual and resident of Brooklyn, New York.

23.     At all relevant times, Plaintiffs were Defendants' employees within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), Articles 6 and 19 of the NYLL, and 12 NYCRR § 146.

24.     Defendant 520 Asian Restaurant Corp. d/b/a Chef Yu ("Chef Yu") is a domestic business corporation organized and existing under the laws of New York and authorized to do business in New York, with its principle place of business at 520 8th Avenue, New York, New York, 10018, and is engaged in the food service and restaurant business.

25.     Defendant 5127 Restaurant Corp. d/b/a Ginger's ("Ginger's) is a domestic business corporation organized and existing under the laws of New York and authorized to do business in New York, with its principle place of business at 512 7th Avenue, New York, New York, 10018, and is engaged in the food service and restaurant business.

26.     Defendant Steven C.J. Tang is a resident of Bergen County, New Jersey, and at all relevant times was an officer, director, and/or owner of Defendant Restaurants. As of the filing of this complaint, Defendant Steven C.J. Tang is listed as Chief Executive Officer of Defendant Ginger's in the New York State Department of State's Division of Corporation's entity information database.   On information and belief, at all relevant times Defendant Steven C.J. Tang exercised operational control over both Defendant Restaurants.

27.     Defendant Alice Tang is a resident of Bergen County, New Jersey, and at all relevant times was an officer, director, and/or owner of Defendant Restaurants.   On information and belief, at all relevant times Defendant Alice. Tang exercised operational control over both Defendant Restaurants.

28.     Defendants Steven C.J. Tang, Tung Sheh Yeh, Alice Tang, and Jane Doe opened Chef Yu in or around 2006 and at the time hired restaurant staff.

29.     On information and belief, Defendant Steven C.J. Tang oversaw the day to

5

day operations of Defendant Chef Yu and from November 2016 until the end of their employment, directly supervised Plaintiffs who worked for Defendants at Chef Yu.

30.    On information and belief, Defendant Teo Su Jin, also known as "Douglas," is a resident of Collin County, Texas, and at all relevant times was an officer, director, and/or owner of Defendant Chef Yu.  As of the filing of this complaint, Defendant Teo Su Jin is listed as Chief Executive Officer of Defendant Chef Yu in the New York State Department of State's Division of Corporation's entity information database.  Defendant Teo Su Jin managed and oversaw the operations of Defendant Chef Yu and intermittently managed and oversaw the operations of Defendant Ginger's.

31.    On information and belief, Defendant Teo Su Jin worked at Defendant Ginger's as a server before he was transferred to Defendant Chef Yu in 2006 to manage the restaurant.On information and belief, Defendant Tung Sheng Yeh, also known as "Peter," is a resident of Bergen County, New Jersey, and at all relevant times was an officer, manager, director, and/or owner of Defendant Restaurants.

32.    On information and belief, at all relevant times, Jane Doe aka "Winnie" was an officer, manager, director, and/or owner of Defendant Restaurants.

33.    On information and belief, Defendant Benny Cheong was at all relevant times an officer, director, and/or owner of Defendant Ginger's.  Defendant Benny Cheong managed and oversaw the operations of Defendant Ginger's throughout the relevant time.  On information and belief Defendant Benny Cheong also regularly collected cash from Defendant Chef Yu, assisted in the bookkeeping of both Defendant Restaurants, and assisted in managing the operations of Defendant Chef Yu in the absence of Defendants Teo Su Jin and Steven C.J. Tang.

6

34.     Defendants jointly employed Plaintiffs at all relevant times.

35.     Defendants have had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

36.     Defendants are part of a single integrated enterprise that jointly employed Plaintiffs at all relevant times.

37.     Defendants' operations have been and are interrelated and unified at all relevant times.

38.     Defendants Steven C.J. Tang and Tung Shen Yeh centrally controlled the labor relations of the Defendant Restaurants.

39.     At all relevant times, Defendant Restaurants were managed and operated by the same Defendant Individuals.

40.     During all relevant times, Defendants have transferred and/or permitted employees to be shared by and between the Defendants Restaurants without retraining.

41.     At all relevant times, Defendants have maintained control, oversight, and direction over Plaintiffs, including payroll and other employment practices.

42.     At all relevant times, all Defendant Restaurants applied and still apply substantially the same employment policies, practices, and procedures to Plaintiffs, including with respect to overtime compensation, minimum wage compensation, unlawful tip retention practices, wage notices and wages statement violations and/or "spread of hours" pay.

43.     Defendants were and still are "employers" as defined by the FLSA, 29 U.S.C. § 203(d), Articles 6 and 19 of the NYLL, and New York Codes, Rules, and Regulations § 146 ("NYCCRR").

44.     Upon information and belief, each Defendant Restaurant, individually, and in combination with persons performing related activities for a common business purpose, enterprises whose annual gross volume of sales made or business done is not less than $500,000, exclusive of sales taxes.

## FACTS

45.     Plaintiff Yue Ming Lin ("Y.M. Lin") worked for Defendants as a server at Chef Yu in New York from approximately January 2006 to April 2017.

46.     From July 2011 until April 2017, Plaintiff Y.M. Lin regularly worked as follows:

a.   Between approximately July 2011 and July 2013, she generally worked approximately 65 to 67 hours per week, and five (5) days per week her start and stop times exceeded 10 hours;

b.   Between approximately August 2013 and July 2014, she generally worked between approximately 45 to 48 hours per week, after discounting breaks, and five (5) days per week her start and stop times exceeded 10 hours;

c.   Between approximately August 2014 and July 2015, she generally worked approximately 41.5 to 44.5 hours per week, after discounting breaks, and four (4) days per week her start and stop times exceeded 10 hours; and

d.   Between approximately August 2015 and October 2016, she generally worked approximately 42 to 45 hours per week, after discounting breaks, and four (4) days per week her start and stop times exceeded

8

10 hours.

e. Beginning in approximately October or November 2016, until April 2017, she generally worked approximately 36 to 38 hours per week, after discounting breaks.

47. Plaintiff Rui Gu Wu ("R.G. Wu") worked for Defendants as a server at Chef Yu in New York from approximately January 2006 to April 2017.

48. From July 2011 until April 2017, Plaintiff R.G. Wu regularly worked as follows:

a. Between approximately July 2011 and July 2013, she generally worked approximately 64 hours per week, and five (5) days per week her start and stop times exceeded 10 hours;

b. Between approximately August 2013 and July 2014, she generally worked between approximately 45 to 48 hours per week, after discounting breaks, and five (5) days per week her start and stop times exceeded 10 hours;

c. Between approximately August 2014 and July 2015, she generally worked approximately 36 to 39 hours per week, after discounting breaks, and four (4) days per week her start and stop times exceeded 10 hours; and

d. Between approximately August 2015 and October 2016, she generally worked approximately 42 to 45 hours per week, after discounting breaks, and four (4) days per week her start and stop times exceeded 10 hours.

  e. Beginning in approximately October or November 2016, until April 2017, she generally worked approximately 36 to 38 hours per week after discounting breaks.

49. Plaintiff Eng Bock Chia ("Chia") worked for Defendants as a server at Chef Yu in New York from approximately April 2006 to April 2017.

50. From July 2011 until April 2017, Plaintiff Chia regularly worked as follows:

  a. Between approximately July 2011 and July 2013, he generally worked approximately 64 hours per week, and five (5) days per week his start and stop times exceeded 10 hours;

  b. Between approximately August 2013 and July 2014, he generally worked between approximately 45 to 48 hours per week, after discounting breaks, and five (5) days per week his start and stop times exceeded 10 hours;

  c. Between approximately August 2014 and July 2015, he generally worked approximately 41.5 to 44.5 hours per week, after discounting breaks, and four (4) days per week his start and stop times exceeded 10 hours; and

  d. Between approximately August 2015 and October 2016, she generally worked approximately 42 to 45 hours per week, after discounting breaks, and four (4) days per week his start and stop times exceeded 10 hours.

  e. Beginning in approximately October or November 2016, until April

2017, he generally worked approximately 36 to 38 hours per week after discounting breaks.

51.     Plaintiff Xin Qiang Yu ("Yu") worked for Defendants at Chef Yu as a substitute server from approximately April 2010 to May 2011, and as a full-time server from approximately June 2011 to the present.

52.     From July 2011 until present, Plaintiff Yu regularly worked as follows:

a.   Between approximately July 2011 and July 2013, he generally worked approximately 53.5 hours per week, and four (4) days per week his start and stop times exceeded 10 hours;

b.   Between approximately August 2013 and August 2015, Plaintiff Yu worked approximately 40.5 to 43.5 hours per week, after discounting breaks, and four (4) days per week his start and stop times exceeded 10 hours;

c.   Between approximately September 2015 and October 2015, Plaintiff Yu worked approximately 18.5 hours per week, after discounting breaks, and two (2) days per week his start and stop times exceeded 10 hours;

d.   Between approximately November 2015 and April 2017, Plaintiff Yu worked approximately 14.5 hours per week, after discounting breaks, and one (1) day per week his start and stop times exceeded 10 hours; and

e.   Beginning in approximately May 2017 and continuing through the present, Plaintiff Yu generally works 8.5 hours per week, after

discounting breaks, and one (1) day per week his start and stop times exceeded 10 hours.

53.     Plaintiff Wai Ho Ng ("Ng") worked for Defendants at Chef Yu as a server from approximately June 2013 to January 2017.

54.     From June 2013 until November 2017, Plaintiff Ng regularly worked as follows:

a.   Between approximately June 2013 and July 2013, he worked approximately 25 hours per week;

b.   Between approximately August 2013 and March 2014, he worked approximately 22.5 to 25.5 hours per week, after discounting breaks;

c.   Between approximately April 2014 and July 2015, he worked approximately 33 to 36 hours per week, after discounting breaks, and three (3) days per week his start and stop times exceeded 10 hours;

d.   Between August 2015 and September 2016, he worked approximately 35 to 38 hours per week, after discounting breaks, and three (3) days per week his start and stop times exceeded 10 hours; and

e.   Between September 2016 and November 2016, he worked approximately 33 to 36 hours per week, after discounting breaks, and three (3) days per week his start and stop times exceeded 10 hours.

55.     On information and belief, between approximately July 2011 and July 2013, Defendants paid Plaintiffs Y.M. Lin, R.G. Wu, Yu, Chia approximately $300.00 twice per month.

56.     Between approximately June 2013 and July 2013, Defendants paid

Plaintiff Ng approximately $5.00 per hour.

57.     Between approximately August 2013 and the December 2016, Defendants regularly paid Plaintiffs Y.M. Lin, R.G. Wu, Chia, Yu, and Ng, $5.00 per hour for the hours they scheduled them to work, up to forty (40) hours per week.

58.     Between approximately January 2017 and April 2017, Defendants regularly paid Plaintiffs Y.M. Lin, R.G. Wu, and Chia, $7.50 per hour for the hours they scheduled them to work, up to forty (40) hours per week.   Between approximately January 2017 and until the present, Defendants regularly paid Plaintiff Yu $7.50 per hour for the hours they scheduled him to work, up to forty (40) hours per week.

59.     Between approximately August 2013 and through December 2013, Defendants failed to pay Plaintiffs Y.M. Lin, R.G. Wu, Chia, and Yu any wages for any hours over forty (40) per week that Plaintiffs worked.

60.     On information and belief, beginning in approximately January 2014, Defendants regularly paid Plaintiffs Y.M. Lin, Wu, Chia, and Yu between approximately $9.00 and $9.38 per hour for some, but not all, of the hours over forty (40) per week that Plaintiffs worked.

61.     Plaintiff Chin Kok Hing ("Kok Hing") worked for Defendants at Ginger's as a server from approximately 2009 to April 2017.

62.     From July 2011 until April 2017, Plaintiff Kok Hing worked as follows:

    a. Between approximately June 2011 and July 2013, he worked approximately 61 to 64 hours per week, and five (5) days per week his stop and start times exceeded 10 hours;

    b.  Between approximately August 2013 and mid-April 2015, he worked

approximately 40 to 45 hours per week, after discounting breaks, and five (5) days per week his stop and start times exceeded 10 hours;

c.   Between approximately mid-April 2015 and August 2015, he 36.5 and 39.5 hours per week, after discounting breaks, and four (4) days per week, his start and stop times exceeded 10 hours;

d.   Between approximately September 2015 and April 2017, Plaintiff Kok Hing worked approximately 32 to 35 hours per week, after discounting breaks, and three (3) days per week, his start and stop times exceeded 10 hours.

63.   Between approximately July 2011 and July 2013, Plaintiff Kok Hing was paid approximately $300.00 twice per month.

64.   On information and belief, between approximately August 2013 and December 2014, Defendants regularly paid Plaintiff Kok Hing $200 per week by check for 40 hours-worth of work.  During this time, Defendants regularly paid Plaintiff Kok Hing for some, but not all, hours he worked in a week over 40, in cash.

65.   On information and belief, between January 2015 and April 2017, Defendants regularly paid Plaintiff Kok Hing approximately between $200 and $292.50 per week for 40 hours-worth of work, by check, and labeled these wages as "commissions."

66.   Plaintiff Grace Wu ("Grace Wu") worked for Defendants at Ginger's as a server from approximately August 2007 to November 2012.

67.   Between approximately July 2011 and November 2012, Plaintiff Grace Wu worked approximately 62.5 to 65.5 hours per week, and five (5) days per week her

14

start and stop times exceeded 10 hours.

68.     Between approximately July 2011 and November 2012, Defendants paid Plaintiff Grace Wu approximately $300.00 twice per month.

69.     Plaintiff Gui Xiang Dong ("Dong") worked for Defendants at Ginger's as a server from approximately January 2013 to June 2014.

70.     Between approximately January 2013 and June 2014, Plaintiff Dong worked approximately 40 to 52 hours per week and four (4) days per week, her start and stop times exceeded 10 hours.

71.     On information and belief, between August 2013 and June 2014, Defendants regularly paid Plaintiff Dong $600 per month.

72.     The primary responsibilities of Plaintiffs who worked as servers for Defendants include the service of food and beverage to Defendant Restaurants' customers, preparing the restaurants for opening and closing, setting and clearing tables, cleaning, and collecting and processing customers' payments.   Other responsibilities include food preparation and cleaning the restaurants' bathrooms and floors, on a rotation basis.

73.     Plaintiff Cindy Lin ("Cindy Lin") worked for Defendants at Ginger's as a packer from approximately June 2011 to the present.

74.     From July 2011 until to the present, Plaintiff Cindy Lin worked as follows:

> a.  Between approximately July 2011 and March 2016, Plaintiff Cindy Lin worked approximately 60 hours per week, and six (6) days per week, her start and stop times exceeded 10 hours;

b.   Between April 2016 and the present, Plaintiff Cindy Lin worked approximately 55 to 58 hours per week and six (6) days per week, her start and stop times exceeded 10 hours.

75.   From approximately July 2011 to the present, Defendants regularly paid Plaintiff Cindy Lin a flat salary of between $1,050 and $1,250, on a semimonthly basis, partly in cash and partly by check.   Defendants failed to pay Plaintiff Cindy Lin an overtime premium for all hours she worked over forty (40) in a workweek.

76.   The primary responsibilities of Plaintiff Lin include packing the take-out orders, food preparation including preparing sauces for take-out orders, arranging utensil for take-out orders, and assisting running orders from the kitchen to the dining room.

**Recordkeeping Practices**

77.   On information and belief, Defendants did not maintain accurate records of the hours Plaintiffs worked.

78.   Defendants required all Plaintiffs to sign documents that reflected the hours they were scheduled to work, not the actual hours they worked, which sometimes exceeded their scheduled work hours.

79.   During the relevant time, Defendants generally did not issue Plaintiffs Y.M. Lin, R.G. Wu, Chia, Ng, Yu, Kok Hing, Dong, Cindy Lin, and Grace Wu, statements with each payment of their wages that listed the accurate number of hours they worked, their rate of pay, or any allowances the Defendants may have purportedly claimed, as required by NYLL § 195(3).

80.   Plaintiffs Ng and Dong, whose employment commenced after April 2011, did not receive from Defendants a notice upon hiring including statutorily prescribed

information such as their rate of pay and any allowances Defendants were claiming against their wages, as required by NYLL § 195(1).

**Tips**

81.   Defendants never informed Plaintiffs who worked as servers, in writing or verbally, of the Defendants' intention to take a tip credit against their minimum wage obligations.

82.   Defendant Restaurants respectively used "tip pools" through which all earned tips were collected, divided, and distributed to certain employees, including all Plaintiffs.  The total tips earned by all servers was supposed to be placed into the "pool" at each Defendant Restaurant and divided and distributed according to a certain number of shares.

83.   From July 2011 until approximately October 2016, Defendant Teo Su Jin implemented a policy whereby he assigned the numbers of shares to Plaintiffs who worked at Chef Yu.

84.   Pursuant to Defendant Teo Su Jin's policy, Plaintiffs Yu and Ng received less than a full share of the tip pool when he started working at Chef Yu.

85.   During the relevant time, Defendant Benny Cheong required Plaintiffs who worked as servers at Ginger's to pay employees who worked as packers between $10 and $20 per night from the tip pool.

86.   During the relevant time, Defendant Benny Cheong required Plaintiffs who worked as servers at Defendant Ginger's to pay Defendants when customers failed to pay for meals from the tip pool.

87.   From approximately November 2016 until April 2017, Defendant Steven

C.J. Tang required Plaintiffs who worked at Chef Yu to pay a full share out of the tip pool on a daily basis to one Chef Yu employee who primarily worked in the restaurant's kitchen and did not customarily and regularly receive tips or directly interact with customers.   On information and belief, Defendant Steven C.J. Tang continues this practice until the present day.

88.     Defendants Steven C.J. Tang regularly required Plaintiffs at each Defendant Restaurant to make up cash register shortages from these tip pools. Defendants personally retained part of these gratuities.

89.     During the relevant time, Defendants neither required Plaintiffs who worked at Defendant Ginger's to report the amounts they earned in tips, nor maintained any records of that information.

90.     During the relevant time, Defendants neither required Plaintiffs who worked at Defendant Chef Yu to report the actual amounts they earned in tips, nor maintained any records of that information.

91.     From approximately August 2013 until the present, Defendants Teo Su Jin and Steven C.J. Tang required Plaintiffs who worked at Defendant Chef Yu to write on the timesheets they signed upon receiving their pay, amounts for tips earned, as dictated to Plaintiffs by Defendants.   The tip amounts Defendants Teo Su Jin and Steven C.J. Tang directed Plaintiffs to write on the timesheets were consistently the same, regardless of how much Plaintiffs actually earned in tips.

**Uniforms**

92.     Defendants required Plaintiffs to wear uniforms.

93.     Plaintiffs who worked at Defendant Chef Yu were given 1 to 2 sets of

uniforms by the Defendants.  Plaintiffs purchased additional sets at their own expense.

94.     Defendants required Plaintiffs who worked at Defendant Ginger's to purchase uniforms at their own expense and Defendants did not reimburse them for the expense.

95.     Defendants did not pay Plaintiffs uniform maintenance pay as required by 12 NYCRR 146-1.7.

### Defendants Joint Activities

96.     Defendants Tung Shen Yeh, Steven C.J. Tang, Alice Tang, Jane Doe, Teo Su Jin, and Benny Cheong were employers as that term is defined by the FLSA, NYLL, and case law interpreting same.

97.     Upon information and belief, Individual Defendants are officers, directors, managers and/or owners of Defendant Restaurants, and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment for employees, and (4) maintained employment records.

98.     Upon information and belief, Individual Defendants are the principles and owners of Defendant Restaurants, centrally controlled and dominated the day-to-day operating decisions of Defendant Restaurants, and made major personnel decisions for Defendant Restaurants.

99.     Defendants Steven C.J. Tang and Tung Shen Yeh are listed as principals for both Defendant Restaurants on the liquor licenses maintained by the New York State Liquor Authority.

100.    Upon information and belief, Defendants Teo Su Jin and Benny Cheong

were owners, supervisors, officers and/or agents of Defendant Restaurants, who acted directly or indirectly in the interest of Defendant Restaurants, and were employers within the meaning of the FLSA and NYLL.

101.    Upon information and belief, Defendants operate a single integrated enterprise that jointly employed or employs Plaintiffs.

102.    Defendants' operations are interrelated and unified within the two Defendant Restaurants.

103.    Individual Defendants maintain centralized control over all labor relations and operations of the Defendant Restaurants.

104.    Individual Defendants exercise common management, ownership and/or financial control over the Defendant Restaurants.

105.    Defendant Restaurants are located one block away from each other.

106.    Defendants maintain websites for each of the Defendant Restaurants. Upon information and belief, Defendant Restaurant's websites were both registered, and are updated and maintained by an individual named Raymond Chan as reflected by records maintained by the Internet Corporation for Assigned Names and Numbers.

107.    Upon information and belief, Defendant Steven C.J. Tang is the signor of the leases for both the Defendant Restaurants.

108.    On information and belief, at all relevant times, the Defendants Steven C.J. Tang and Tung Shen Yeh hired all managers for Defendant Restaurants. Defendants Steven C.J. Tang, Alice Tang, Tung Shen Yeh, and Jane Doe supervised the managers and held regular meetings with them and other shareholders of Defendant Restaurants at Chef Yu to, on information and belief, ensure that all delegated procedures and policies

were enforced as dictated by the Defendants Steven C.J. Tang, Alice Tang, Tung Shen Yeh, and Jane Doe, and to discuss the restaurants' sales.

109.    During the relevant time, Defendants Teo Su Jin and Jane Doe assisted in managing the operations of Defendant Ginger's when Defendant Benny Cheong was away from the business, typically for vacations.

110.    Defendant Jane Doe was physically present at and/or assisted in the day-to-day operation of Defendant Ginger's.

111.    On information and belief, at all relevant times, Defendant Benny Cheong reported to Defendant Chef Yu to check on the business, collect the restaurant's cash and receipts, assist with the restaurant's bookkeeping, and assist with the restaurant's operations whenever either Defendants Teo Su Jin or Steven C.J. Tang were unavailable to oversee the restaurant.

112.    Defendant Alice Tang trained the staff at Defendant Chef Yu, including Plaintiffs Y.M. Lin and R.G. Wu, when it opened in 2006.

113.    On information and belief, Defendants transferred several employees from Defendant Ginger's to Defendant Chef Yu, including Defendant Teo Su Jin.

114.    On information and belief, during the relevant time, when Defendant Chef Yu was short on kitchen staff, kitchen staff from Defendant Ginger's were sent to Chef Yu to work at the restaurant.

115.    Defendant Tung Shen Yeh's son, known to Plaintiffs as "Jesse," works at Defendant Chef Yu as a server, and commonly referred to Defendant Tung Shen Yeh as the "big boss" of the restaurant.

116.    During the relevant time, Defendants held annual banquets for employees

of both Defendant Restaurants.

117.   At all relevant times, Individual Defendants have had the power over payroll decisions at Defendant Restaurants, including the power to retain time and/or wage records.

118.   At all relevant times, Individual Defendants were actively involved in managing the day to day operations of all Defendant Restaurants.

119.   At all relevant times, Individual Defendants have had the power to stop any illegal pay practices that harmed Plaintiffs.

120.   At all relevant times, Individual Defendants have had the power to transfer and did transfer the assets and/or liabilities of Defendant Restaurants.

121.   At all relevant times, Individual Defendants have had the power to enter into contracts on behalf of the Defendant Restaurants.

122.   At all relevant times, Defendants Steven C.J. Tang and Tung Sheh Yeh have had the power to close, shut down, and/or sell the Defendant Restaurants.

**FIRST CAUSE OF ACTION:**
**FLSA - MINIMUM WAGE COMPENSATION**
**(ON BEHALF OF ALL PLAINTIFFS EXCEPT PLAINTIFFS GRACE WU AND**
**GUI XIANG DONG)**

123.   Plaintiffs reallege and incorporate by reference all the allegations set forth above.

124.   The FLSA requires that employers pay their employees specified minimum hourly wages.  29 U.S.C. § 206.

125.    Defendants failed to pay Plaintiffs at the applicable legal minimum hourly wage, in violation of 29 U.S.C. § 206(a).

126.   Defendants failed to inform Plaintiffs who worked as servers of the

22

Defendants' intention to take the tip credit and failed to indicate the amount taken as tip credit on the paystubs.

127.   Defendants were ineligible for a tip credit against their minimum wage obligations with regard to Plaintiffs because, inter alia, the Defendants did not notify the Plaintiffs of the applicable legal provisions of the FLSA, or of Defendants' intention to claim a tip credit against their minimum wage obligations to reduce the applicable minimum wage, and at times Defendants required Plaintiffs to remit portions of the tip pools to Defendant Restaurants.

128.   Defendants' failure to pay Plaintiffs the lawful minimum hourly wage was willful.

129.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

**SECOND CAUSE OF ACTION:**
**FLSA - OVERTIME COMPENSATION**
**(ON BEHALF OF ALL PLAINTIFFS EXCEPT PLAINTIFFS GRACE WU AND GUI XIANG DONG)**

130.   Plaintiffs reallege and incorporate by reference all the allegations set forth above.

131.   Throughout the relevant time, the FLSA required Defendants to compensate Plaintiffs at one-and-a-half times the minimum wage or regular pay rate for all hours worked in excess of 40 hours per week, whichever is greater.  29 U.S.C. § 207.

132.   Defendants failed to pay Plaintiffs overtime wages at rates at least one-

and-a-half times the minimum wage for each hour worked in excess of 40 hours per week, in violation of 29 U.S.C. § 207.

133.    Defendants' failure to pay Plaintiffs lawful overtime wages was willful.

134.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

**THIRD CAUSE OF ACTION:**
**<u>NEW YORK – MINIMUM WAGE COMPENSATION</u>**

135.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

136.    New York Labor Law requires that employers pay their employees specified minimum hourly wages.  NYLL § 652.

137.    Defendants failed to pay Plaintiffs at the applicable legal minimum hourly wage, in violation of NYLL § 652 and supporting regulations and orders of the New York State Department of Labor.

138.    Defendants failed to inform Plaintiffs who worked as servers of the Defendants' intention to take the tip credit and failed to indicate the amount taken as tip credit on the paystubs.

139.    Defendants were ineligible for a tip credit against their minimum wage obligations with regard to Plaintiffs because, inter alia, the Defendants did not notify the Plaintiffs of the applicable legal provisions of the NYLL, or of Defendants' intention to claim a tip credit against their minimum wage obligations to reduce the applicable minimum wage, and at times Defendants required Plaintiffs to remit portions of the tip

24

pools to Defendant Restaurants.

140.    Defendants' failure to pay Plaintiffs the lawful minimum hourly wage was willful.

141.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

**FIFTH CAUSE OF ACTION:**
**NEW YORK – OVERTIME COMPENSATION**

142.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

143.    Throughout the relevant time, the NYLL, adopting the FLSA standards and exemptions by regulation, required Defendants to compensate Plaintiffs at one and one-half times the regular pay rate for all hours worked in excess of 40 hours per week. NYLL § 652; and 12 NYCRR §§ 146-1.1, 146-1.4 et seq.

144.    Throughout the relevant time, Defendants failed to pay Plaintiffs overtime wages at rates at least one and one-half times the minimum wage for each hour worked in excess of 40 hours per week, in violation of the NYLL and supporting regulations.

145.    Defendants' failure to pay Plaintiffs lawful overtime wages was willful.

146.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

**SIXTH CAUSE OF ACTION:**
**NEW YORK – SPREAD OF HOURS COMPENSATION**

147.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

148.    Title 12 NYCRR § 146-1.6 requires that "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."

149.    Defendants failed to pay Plaintiffs "spread of hours" compensation.

150.    Upon information and belief, Defendants' failure to pay "spread of hours" compensation was willful.

151.    By the foregoing reasons, Defendants have violated 12 NYCRR § 146-1.6 and are liable to Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION:**
**NEW YORK – UNLAWFUL TIP RETENTION**

152.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

153.    From approximately November 2016 until the present, Defendants unlawfully retained gratuities or charges purported to be gratuities of Plaintiffs who worked as servers at Chef Yu, in violation of NYLL § 196-d.

154.    Defendants' violations of the NYLL, as described, were willful and intentional.

155.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, the amount of retained tips, liquidated

damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## EIGHTH CAUSE OF ACTION:
## NEW YORK – UNLAWFUL DEDUCTIONS OR KICKBACKS

156.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

157.    During the relevant time, Defendants unlawfully made charges against the wages of Plaintiffs who worked as servers at Ginger's, in violation of NYLL §§ 193 and/or 198-b.

158.    Defendants' violations of the NYLL, as described, were willful and intentional.

159.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, the amount of unlawful deductions or kickbacks, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## NINTH CAUSE OF ACTION:
## NEW YORK– FAILURE TO PROVIDE HIRE NOTICES
## (ON BEHALF OF PLAINTIFFS WAI HO NG AND GUI XIANG DONG)

160.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

161.    Defendants have failed to supply Plaintiffs Wai Ho Ng and Gui Xiang Dong with hire notices, as required by NYLL § 195(1), in English or in their primary language, Chinese, containing Plaintiffs rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing

business as" names use by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

162.    Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 et. seq., and the supporting New York State Department of Labor Regulations.

163.    According to NYLL § 198-1(b), Plaintiffs are entitled to $50 for every week in which they did not receive a wage notice and/or statement, or a total of $2,500, together with costs and reasonable attorney's fees.

164.    By the foregoing reasons, Defendants have violated NYLL §§ 195(1) and 198-1(b) and are liable to the Plaintiffs Wai Ho Ng and Gui Xiang Dong in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

### NINTH CAUSE OF ACTION
### NEW YORK - FAILURE TO PROVIDE WAGE STATEMENTS

165.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

166.    Pursuant to NYLL §§ 198-1(d) and 195(3) and 12 NYCRR § 146-2.2 and 2.3, an employer is required to provide its employee with a paystub that accurately reflects the rate of pay, the hours worked and the amounts deducted. The paystubs must include: the employee's rate or rates of pay; the overtime rate of pay, if the employee is subject to overtime regulations; the basis of wage payment (per hour, per shift, per week, piece rate, commission, etc.); any allowances the employer intends to claim as part of the minimum wage including tip, meal, and lodging allowances; the regular pay day; the

employer's name and any names under which the employer does business (DBA); the physical address of the employer's main office or principal place of business and, if different, the employer's mailing address ; and the employer's telephone number.

167.    Plaintiffs did not receive paystubs each week that they worked.

168.    By the foregoing reasons, Defendants have violated NYLL §§ 198-1(d) and 195(3) and 12 NYCRR § 146-2.2 and 2.3 and are liable to the Plaintiff in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**<u>NEW YORK - FAILURE TO PROVIDE UNIFORM MAINTENANCE PAY AND REIMBURSEMENTS FOR UNIFORMS</u>**

169.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

170.    During the relevant time, Defendants failed to provide Plaintiffs uniform maintenance pay, in violation of 12 NYCRR § 146-1.7.

171.    During the relevant time, Defendants failed to reimburse Plaintiffs for the cost of required uniforms, in violation of 12 NYCRR § 146-1.8.

172.    Defendants' violations of the NYLL and its implementing regulations, as described, were willful and intentional.

173.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, the uniform maintenance pay and the costs of required uniforms, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

**<u>REQUEST FOR RELIEF</u>**

**WHEREFORE**, Plaintiffs demand judgment:

(a)     Declaring Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA and NYLL;

(b)     Awarding Plaintiffs unpaid minimum wages and overtime wages due under the FLSA and NYLL;

(c)     Awarding Plaintiffs spread of hours compensation under the NYLL;

(d)     Awarding Plaintiffs damages due to unlawful retention of tips under the NYLL;

(e)     Awarding Plaintiffs Wai Ho Ng and Gui Xiang Dong damages due to hire notice violations under the NYLL;

(f)     Awarding Plaintiffs damages due to wage statement violations under the NYLL;

(g)     Awarding Plaintiffs uniform maintenance pay due under the NYLL and implementing regulations;

(h)     Awarding Plaintiffs the unreimbursed costs of required uniforms due under the NYLL and implementing regulations;

(i)     Awarding Plaintiffs liquidated damages;

(j)     Awarding Plaintiffs pre-judgment and post-judgment interest;

(k)     Awarding Plaintiffs the costs of this action, together with reasonable attorneys' fees; and

(l)     Awarding such other relief as this Court deems just and proper.

Dated: New York, New York
          August 3, 2017


                                        VIRGINIA & AMBINDER, LLP

By:      s/Lloyd R. Ambinder
Lloyd R. Ambinder, Esq.
LaDonna M. Lusher, Esq.
Michele A. Moreno, Esq.
VIRGINIA & AMBINDER, LLP
40 Broad Street, Seventh Floor
New York, New York 10004
Tel:     (212) 943-9080
Fax:     (212) 943-9082
llusher@vandallp.com

URBAN JUSTICE CENTER
Reena Arora, Esq.
David Ureña, Esq.
123 William Street, Sixteenth Floor
New York, New York 10038
Tel:     (646) 459-3020
Fax:     (212) 533-4598
rarora@urbanjustice.org

*Attorneys for the Plaintiffs*