UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENG BOCK CHIA, RUI GUI WU, YUE MING LIN, GRACE WU, CINDY LIN, XIN QIANG YU, GUI XIANG DONG, CHIN KOK HING, WAI HO NG, JIANWEI XU, and WONG KAM FOONG, | **Index No.:** 17-CV-5885 (GHW) |
| Plaintiffs, | |
| - against - | |
| 520 ASIAN RESTAURANT CORP. d/b/a CHEF YU, 5127 RESTAURANT CORP. d/b/a GINGER'S, TUNG SHENG YEH, STEVEN C.J. TANG, KUAN YOKE AKOON aka "WINNIE," TEO SU JIN, BENNY CHEONG, and/or other persons or entities affiliated with or controlled by 520 ASIAN RESTAURANT CORP. d/b/a CHEF YU and/or 5127 RESTAURANT CORP. d/b/a GINGER'S and/or TUNG SHENG YEH, STEVEN C.J. TANG, KUAN YOKE AKOON aka "WINNIE," TEO SU JIN, and/or BENNY CHEONG, individually, | |
| Defendants. | |

## JOINT PRETRIAL ORDER

Pursuant to Fed. R. Civ. P. 16, the parties hereby adopt the following as their joint pretrial order to govern the trial of this case:

**1) Names, law firms, addresses, and telephone and fax numbers of trial counsel.**

<u>Plaintiffs' Counsel</u>

VIRGINIA & AMBINDER LLP
LaDonna M. Lusher
Kara S. Miller
Michele A. Moreno
40 Broad Street, 7th Floor
New York, NY 10004
Phone: (212) 943-9080
Fax: (212) 943-9082

TAKE ROOT JUSTICE
Tito Sinha
Farrell Brody
Eliseo Cabrera

1

123 William St., 16th Floor; New York, NY 10038
Phone: (646) 459-3032
Fax: (212) 619-0653

**Defendants' Counsel**

HERBERT LAW GROUP LLC
John T. Herbert, Esq.
96 Engle Street
Englewood, NJ 07631
(201) 490-4070

Jenny Shen, Esq.
J. SHEN LAW FIRM, LLC
580 Sylvan Avenue, Suite M-G
P.O. Box 1562
Englewood Cliffs, New Jersey 07632
(201) 227-8700

    2) **Subject matter jurisdiction.**

        The basis for subject matter jurisdiction in this matter is original federal question under 28 U.S.C. 1331, because this case is brought under the Fair Labor Standards Act, 29 USC 201 *et seq.* ("FLSA") and Defendants engaged in commerce or otherwise worked on goods or materials that have been moved or produced for commerce, and have no less than $500,000.00 in annual gross volume of sales made or business done.  [See Stipulations of Fact and Law, ¶¶ 28-29.]  This Court also has supplemental jurisdiction over Plaintiffs' New York Labor Law 650 *et seq.* and 215 ("NYLL") claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative fact as the federal claim and are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

    3) **A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies.**

*Plaintiffs' Claims*

        The individual Plaintiffs in this action worked for Defendants as servers and packers at two restaurants, 520 Asian Restaurant Corp. d/b/a Chef Yu and 5127 Asian Restaurant Corp. d/b/a Gingers. Plaintiffs allege that Defendants failed to pay them proper minimum wages, overtime wages, spread of hours, made unlawful deductions from their pay, unlawfully retained their tips and gratuities, failed to provide them legally required notices, and failed to reimburse them for the costs of uniform maintenance. Plaintiffs bring these claims pursuant to the Fair Labor Standards

Act (FLSA) 29 U.S.C. §§ 206, 207, and New York Labor Law (NYLL) §§ 193, 195(1) and (3), 196-d, 198-1(b) and 1(d), 663 651 *et seq.* and 650 *et seq.* and 12 New York Codes, Rules and Regulations (NYCRR) 146-1.2, 146-1.4, 146-1.6, 146-1.7, 146-1.8, 146-2.2 and 2.3. Plaintiff Cindy Lin also alleges that she was retaliated against in violation of New York Labor Law § 215(1)(a) for filing the instant lawsuit. Each of these issues remain to be tried. Further, the parties must try the issue of individual employer liability for Plaintiffs' damages and Plaintiffs' entitlement to liquidated damages. See FLSA, 29 U.S.C. §203(d), 216(b); 29 C.F.R. § 791.2(a); NYLL §§190, 198.

Plaintiffs will not be trying the claims of Plaintiff Wong Kam Foong as she no longer wishes to participate in this matter.


*Defendants' Defenses*

Defendant 520 Asian Restaurant Corp. d/b/a Chef Yu and 5127 Asian Restaurant Corp. d/b/a Gingers, employed the individual Plaintiffs in this action as servers and packers at two restaurants, 520 Asian Restaurant Corp. d/b/a Chef Yu and 5127 Asian Restaurant Corp. d/b/a Gingers.

While Plaintiffs make numerous allegations, they fail to make credible claims with respect to all aspects of their employment with and payments from Defendants that potentially impact all or many of their claims pursuant to Federal Rule of Civil Procedure 8(a)(2). Namely, the alleged harms sustained by the Plaintiffs resulted from Plaintiffs' own acts and/or omissions and were not the proximate result of any act of Defendants but rather the demands of the Plaintiffs as part of their employment relationship with Defendants.

Plaintiffs had a duty to mitigate the harm, if any, by complying with Defendants' time and attendance and work rules and affirmative duty to immediately report any concerns to Defendants, which they failed to do although they had specific knowledge to such obligations through prior experiences. They also made specific demands as conditions of employment with Defendants. At all relevant times, Defendants acted in good faith and had a reasonable belief that Defendants' conduct never at any time violated the Fair Labor Standards Act, 29 USC 201 *et. seq.* or New York Labor Law 650 *et. seq.* but rather done in an effort to meet the demands of the Plaintiffs.


   4)  **Number of trial days and whether the case is to be tried by a jury.**

Given the number of witnesses, the parties estimate that this trial will last for seven days. This case will not be tried by a jury.

3

**5) Statement as to whether or not all parties have consented to trial by a magistrate judge.**

All parties have not consented to trial by a magistrate judge.

**6) Any stipulations or agreed statements of fact or law to which all parties consent.**

*The parties agree to the following stipulations or agreed statements of facts and law:*

1.      Plaintiffs' claims under New York Law date, at the earliest, to August 4, 2011 (6 years before the initial complaint was filed on August 4, 2017).

2.      Plaintiffs' claims under the Fair Labor Standards Act date, at the earliest, to August 4, 2014 (3 years before the initial complaint was filed on August 4, 2017).

3.      Chin Kok Hing worked at Gingers as a server from at least August 4, 2011 through April 2, 2017.

4.      Eng Bock Chia worked at Chef Yu as a server from at least August 4, 2011 through April 9, 2017.

5.      Gui Xian Dong worked at Gingers as a server from January 10, 2013 to June 27, 2014.

6.      Jian Wei Xu worked at Chef Yu as a server from at least August 4, 2011 through April 17, 2015.

7.      Rui Gui Wu worked at Chef Yu as a server from at least August 4, 2011 through April 9, 2017.

8.      Wai Ho Ng worked at Chef Yu as a server from August 1, 2013 through November 23, 2016.

9.      Xin Quiang Yu worked at Chef Yu as a server from at least August 4, 2011 through February 15, 2018.

10.     Yue Ming Lin worked at Chef Yu as a server from at least August 4, 2011 through

4

April 9, 2017.

11.     Cindy Lin worked at Gingers as a packer from at least August 4, 2011 through the date that Ginger's closed. Cindy Lin also worked at Chef Yu as a packer from June 1, 2016 through July 31, 2017.

12.     Grace Wu worked at Gingers as a server from at least August 4, 2011 through at least November 30, 2012.

13.     Plaintiffs were all employees of Gingers and/or Chef Yu.

14.     Defendant Steven C.J. Tang was a manager of Chef Yu, had the power to hire and fire employees, handled payroll, and had the power to address all other employee and restaurant matters.

15.     Defendant Benny Cheong was a manager of Gingers, had the power to hire and fire employees, handled payroll, and had the power to address all other employee and restaurant matters.

16.     Defendant Teo Su Jin (a/k/a Douglas) was a manager of Chef Yu from at least August 4, 2011 through October 2016 and during that time, he had the power to hire and fire employees, handled payroll, and had the power to address all other employee and restaurant matters.

17.     Defendant Steven C.J. Tang is an employer under the FLSA for all Plaintiffs.

18.     Defendant Steven C.J. Tang is an employer and/or agent under NY Labor Law for all Plaintiffs.

19.     Defendant Kuan Yoke Akoon (a/k/a Winnie) is an employer under the FLSA for all Plaintiffs.

20.     Defendant Kuan Yoke Akoon (a/k/a Winnie) is an employer and/or agent under NY Labor Law for all Plaintiffs.

21.     Defendant Benny Cheong is an employer under the FLSA for all Plaintiffs.

22.     Defendant Benny Cheong is an employer and/or agent under NY Labor Law for all Plaintiffs.

23.     Defendant Tung Sheng Yeh (a/k/a Peter) is an employer under the FLSA for all Plaintiffs.

24.     Defendant Tung Sheng Yeh (a/k/a Peter) is an employer and/or agent under NY Labor Law for all Plaintiffs.

25.     Defendant Teo Su Jin (a/k/a Douglas) is an employer under the FLSA.

26.     Defendant Teo Su Jin (a/k/a Douglas) is an employer and/or agent under NY Labor Law.

27.     Each of the individual Defendants is a shareholder and part owner of Defendant 520 Asian Restaurant Corp. and Defendant 5127 Restaurant Corp.

28.     520 Asian Restaurant Corp. d/b/a Chef Yu  was, at all relevant times, an "enterprise," pursuant to 29 U.S.C. § 203(s)(1)(A), engaged in commerce or otherwise worked on goods or materials that have been moved or produced for commerce, and has no less than $500,000.00 in annual gross volume of sales made or business done.

29.     5127 Restaurant Corp. d/b/a Gingers was, at all relevant times, an "enterprise," pursuant to 29 U.S.C. § 203(s)(1)(A), engaged in commerce or otherwise worked on goods or materials that have been moved or produced for commerce, and has no less than $500,000.00 in annual gross volume of sales made or business done.

30.     Between August 4, 2011 and July 31, 2013 Plaintiffs were not paid overtime wages.

31.     Between August 4, 2011 and July 31, 2013 Plaintiffs were not paid spread of hours compensation.

32.     Between August 4, 2011 and July 31, 2013 Plaintiffs were paid a flat amount for their hours worked on either a weekly or bi-weekly basis.

**7)  A list of all trial witnesses, indicating whether or not such witnesses will testify in person or by deposition, and a brief summary of the substance of each witnesses' testimony.**

*Plaintiffs expect to call the following witnesses:*

| Name | Expected Testimony |
|---|---|
| Eng Bock Chia | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Rui Gui Wu | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Yue Ming Lin | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Grace Wu | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |

| | |
|---|---|
| Cindy Lin | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Also testimony about retaliation claim and events after this lawsuit was filed. Direct testimony by affidavit. |
| Xin Qiang Yu | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Gui Xiang Dong | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Chin Kok Hing | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Wai Ho Ng | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Jianwei Xu | Named Plaintiff - testimony about work at Defendants' restaurant, hours worked, Defendants' wage and hour, tip, notice, and uniform violations, knowledge about individual defendants. Direct testimony by affidavit. |
| Irayda Perez | Virginia & Ambinder, LLP's junior forensic analyst, expected to testify |

| | |
|---|---|
| c/o Virginia & Ambinder, LLP<br>40 Broad Street, 7th floor<br>New York, New York 10004 | as a fact witness about Plaintiffs' damages and the creation of Plaintiffs' damages chart.  Direct testimony by affidavit. |
| Chen-Wha Cheng aka David Cheng | Defendants' payroll and accounting practices; audits conducted of Defendants' business; Defendants' tax records; Defendants' financials Testimony by deposition. |
| Steven C.J. Tang | Testimony about Defendants' payroll, time keeping and accounting practices; Plaintiffs' work at Defendants' restaurants. Testimony by deposition. |
| Benny Cheong | Testimony about Defendants' payroll, time keeping and accounting practices; Plaintiffs' work at Defendants' restaurants; Defendants' wage and hour, policies and practices; Cindy Lin's work schedule.  Testimony by deposition. |
| Teo Su  Jin ("Douglas") | Testimony about hiring at the restaurants and Plaintiffs' work at Defendants' restaurants.  Testimony by deposition. |

*Defendants expect to call the following witnesses*

| | |
|---|---|
| Steven C.J. Tang | Named Defendant – testimony about policies, procedures and practices with respect to payroll and employee schedules, including hours worked by Plaintiffs, as well as the policies, procedures and practices of assigning duties and tasks, tips and tip-sharing, and uniforms; knowledge of individual Plaintiffs after June 2013. In person. |
| Kuan Yoke Akoon ("Winnie") | Named Defendant – testimony about Defendant's lack of knowledge as it relates to |

| | the wage and hour aspects of the allegations. In person. |
|---|---|
| Benny Cheong | Named Defendant – testimony about policies, procedures and practices with respect to payroll and employee schedules, including hours worked by Plaintiffs, as well as the policies, procedures and practices of assigning duties and tasks, tips and tip-sharing, and uniforms; knowledge of individual Plaintiffs. In person. |
| Mark H. Wander, CPA<br>c/o Herbert Law Group, LLC<br>96 Engle Street<br>Englewood, NJ 07631 | Herbert Law Group's fact witness, expected to testify about Plaintiffs' actual damages and what if any payments are owed by way of Federal or New York wage and hour laws. |
| Chen-Wha Cheng aka David Cheng | Defendants' accountant – expected to testify about Defendants' payroll and accounting practices, tax records and financials. In person. |

**8) A designation by each party of deposition testimony to be offered in its case in chief and any counter-designations and objections by any other party.**

*Deposition testimony offered by Plaintiffs:*

**Deposition testimony of Chen Wha (David) Cheng**

| 22:6-8 | Q. Are you licensed as a Certified Public Accountant?<br>A. Yes. |
|---|---|
| 35:14-18 | Q. How about Kuan Yoke Akoon?<br>A. So, she was a contact for one of the restaurants.<br><br>Q. Do you remember which one?<br>A. Ginger. I think it was Ginger. |
| 36:14-37:2 | Q. Has Kuan ever been a client of yours?<br>A. Yes.<br><br>Q. For how long?<br>A. It was a few years ago, after she began managing for a restaurant.<br><br>Q. Did you say that was a few years ago?<br>A. It was for a restaurant that existed<br> more than ten years ago. Then, two to three |

| | |
|---|---|
| | years after its existence, it became my client.<br><br>Q. What was the name of that restaurant?<br>A. That's Ginger.<br><br>Q. So, Kuan managed Ginger's?<br>A. Yes |
| 37:14-38:4 | A. Benny Cheong is the manager of Ginger. And Teo is the manager for 520.<br>Q. Okay. That's fine. Then what about Kuan; what restaurant was she the manager for?<br>A. Which one is Kuan?<br>Q. Kuan Yoke Akoon.<br><br>A. Ginger.<br>Q. Also Ginger?<br><br>THE WITNESS: (In English.) Ginger, yes. Kuan is Ginger. Kuan is Ginger. Teo is 520.<br><br>Q. And Benny?<br>THE WITNESS: (In English.) Benny is 5127. |
| 48:12-18;<br>49:13-19<br>52:1-4<br>52:25-53:7 | Q. So, for example, on page two of Exhibit Cheng 2, which is dated August 19, 14 2013, it says that, "Please be advised that our company regularly withdrew cash from our bank to pay the company's off-book restaurant worker and some other expenses needed to be paid by cash."...<br><br>Q. So, how would you put into the tax return the cash paid to the off-book restaurant worker?<br>A. It would be different in different years, and there's no set rule where to allocate. Sometimes it can be allocated into repair or food cost or supplies or payroll.<br><br>Q. Didn't you testify that you prepared those letters in Cheng Exhibit 2?<br>A. Yes, I prepared them.<br><br>Q. Okay. But if the off-book restaurant workers expense was allocated into something like supplies or food expense, then that number would not be included within the total for employee payroll to be reported, correct?<br>A. That's correct. It would not be included in the 941. |
| 53:8-54:5 | Q. It looks like on a couple of these letters, for example, in March of 2012, you prepared a letter that says, "Please be advised that our company paid approximately $150,000 expenses in cash during the year 2011. Please allocate these expenses into different category (cash worker compensation, kitchen supplies, pest control, advertising, etc.) as our discussion in preparing the company's tax return" (handing).So, is that $150,000 in cash that you had to allocate into different categories for the entire year? |

| | |
|---|---|
| | A. Yes.<br><br>Q. How would you decide how to allocate it?<br>A. As mentioned before, I don't have a set rule; for example, what percentages are allocated into different categories.<br><br>Q. Okay. It could be different every time?<br>A. Correct. |
| 54:14-55:3 | Q. For example, on this one dated March 2015, "Please be advised that our company paid $100,000 expenses in cash during the period in 01/01/2014 and 12/31/2014. And our company paid most of our employees' payroll taxes. Please allocate these expenses into different category." So, it's the same situation; it's the cash expenses for an entire year to be allocated?...<br>A. Yes |
| 60:6-13 | Q. You testified earlier that you would process the payroll for 520 Asian Restaurant Corp., correct?<br>A. Yes.<br><br>Q. How often would you do that?<br>A. It depends on how often they need it; every two weeks or every week. I believe that 520 has it for every two weeks. |
| 75:4-12 | Q. When these two companies would give you the information verbally, would this be information about how many hours their employees worked, for example?<br>A. No.<br><br>Q. What kind of information would they give you verbally?<br>A. As I recall, there were figures for this salary, how much the figure would be. |
| 99:7-13 | A. So, I'm not aware of what's being paid between gross and net pay.<br><br>Q. Okay. You just know that you are supposed to make sure they get $300 reported net pay?<br><br>THE WITNESS: (In English.) On the check, yes. |
| 102:4-103:2 | Q. So, you did not receive documents that had employee signatures on them?<br>A. No.<br><br>Q. Because Steven testified at his deposition that he would give you these types of documents in Exhibit 6 so that you could calculate the total hours and total tips to give the employees a check.<br><br>A. I don't know about his testimony, but what I received were total figures of these, the total hours, just like in this report.<br><br>Q. And you are referring to Cheng 3?<br>A. Yes. |

|  | Q. It's your testimony that Steven is incorrect, that he didn't give you the reports like Plaintiffs' Exhibit 6?<br>A. I don't know what he did. It's not for me to answer what he did.<br><br>Q. But he testified that you calculated the total hours and total tips. Are you saying that is incorrect?<br>A. It's incorrect, to the best of my knowledge... |
|---|---|
| 104:5-20 | Q. I just have a simple question; did you ever calculate the hours and the pay that was given to the employees at Chef Yu?<br>A. No, in the regular or general sense, but I am not sure if they were any exceptions.<br><br>Q. Did you ever calculate the hours and the pay for Ginger's, for the employees at Ginger's?<br>A. Not in my regular service or in general. There may have been one or two exceptions. That, I do not know. But on a regular basis, I have not done so.<br><br>Q. On a regular basis, you would just write down numbers that were told to you; is that correct?<br>A. Correct. |
| 111:12-18 | Q. Was there a time when the company started to pay using an hourly rate?<br>A. I believe so. When they told me the number of hours, I would use the number of hours. If they didn't tell me the number of hours, they gave me figures. Then, I would use the figures. |

**Deposition of Benny Cheong**

| 63:10-15 | Q. Well, if you are not there, who do the workers go to if they have an issue?<br>A. If it is just one or two days like a day off, there would be no one in charge. But if it is a long vacation, then Winnie would<br>take my place or come in and help. |
|---|---|
| 76:17-79:2 | Q. Did you ever have any discussions with Steve or Peter about how much the workers at Ginger's were being paid?<br>A. During meetings, yes. We did talk about that. And after 2013, we just follow the hourly rate.<br><br>Q. What would you discuss at these meetings about the wages?<br>A. Can you repeat that?<br><br>Q. You said that you would discuss the wages with Steven and Peter at the meetings.<br>A. Yes.<br><br>Q. And then in 2013, you decided to give the hourly rate. What else would you discuss about the wages at these meetings? |

|  | A. You mean besides the wages or -- |
|---|---|
|  | Q. Just in addition, besides giving the hourly rate in 2013, did you discuss anything else with respect to the wages?<br>A. No. |
|  | Q. Winnie was also present at these meetings?<br>A. Yes. |
|  | Q. Did you ever have any other discussions with Winnie about the wages that were paid to the workers at Ginger's?<br>A. At the meeting we spoke about that. Everybody heard it. Everyone knows it. |
|  | Q. When you say, "we spoke about that," you mean about paying the workers an hourly rate beginning in 2013?<br>A. Correct. |
| 82:21-25 | Q. Prior to 2013, were the servers paid a flat amount instead of an hourly rate?<br>A. Correct.<br><br>Q. Do you recall how much that was?<br>A. Six hundred a month. |
| 84:18-24 | Q. Then how about the packers? You said that they were paid two times a month, a flat amount. How much did they get?<br><br>A. The packers -- so, we have of a beginning price when we just opened. And then from there on, it has been increasing a little bit by -- a little by a little. |
| 85:7-15 | Q. The packers who worked at nighttime would also receive a portion of the tips from the servers?<br>A. About ten to $20.00. It depends. Every day it is different.<br><br>Q. When you said, "at nighttime," does that mean just from the dinner shift?<br>A. Yes. From three to ten. |
| 86:7-18 | Q. ...Did the packers get checks or cash or both?<br>A. When?<br><br>Q. 2011 until today.<br>A. From 2011 until mid-2017, between June and July, it was partial cash and partially checks.<br><br>Q. Then what happened in mid-2017?<br>A. From that point on, it changed to pay by hours.<br><br>Q. In mid-2017?<br>A. Yes. Correct. |
| 89:14-21 | Q. How is payroll prepared? |

| | |
|---|---|
| | A. Every week I would write down how much hours they have worked. I provide these (sic) information to my accountant and then the accountant would generate the payroll and then we would write the check out.<br><br>Q. Is this accountant David Chen?<br>A. Correct |
| 90:23-91:9 | Q. Between just 2011 and today, did the restaurant record the hours worked by the employees?<br>A. After 2013, there was.<br><br>Q. After 2013, the restaurant recorded the hours worked by the employees?<br>A. Yes.<br><br>Q. Prior to 2013, did the restaurant record the hours?<br>A. No, but they have their schedule. So, they know how many hours they have worked. |
| 94:15-19 | Q. Did the employees receive breaks?<br>A. Before 2013, there were lunch hours, dinner hours or meal hours, mealtimes. But there were no break times. But after 2013, there were mealtimes and there was break time. |
| 97:15-98:4 | Q. Do you know if there was a policy at Ginger's that if there was a cash register shortage, that the servers would have to pay for that from their tips?<br>A. Generally speaking, there is no policy. Usually, if someone eat and dash or they run away from the bill, basically, I would just void the bill and it is on the house. And if this happens often or like twice a day, then I would make them pay half of the meal, half of the bill.<br><br>Q. When you say, "them," do you mean the server?<br>A. Correct. |
| 125:11-16<br>128:13-<br>129:18 | Q. Do you know who Cindy Lin is?<br>A. Yes, I do.<br><br>Q. Who is she?<br>A. She is one of the packers downstairs.<br><br>Q. Did you hire her?<br>A. Yes. ...<br><br>Q. Did her schedule also change?<br>A. Correct.<br><br>Q. To what?<br>A. It became every week, 40 hours every week.<br><br>Q. Why was it changed to 40 hours a week every week?<br>A. Ever since we got the lawsuit. |

Q. Her schedule was changed as a result of the lawsuit?
A. Correct.

Q. Did you decide to change her schedule?
A. Correct.

Q. Did you consult with Steven and Peter and Winnie about changing her schedule?
A. Yes, we did discuss.

Q. What did you discuss about changing her schedule?
A. Because ever since we changed to -- because ever since we got the lawsuit, we changed by hourly rate. That is why we changed to hours.

Q. You are talking about, when you say, "the lawsuit," you mean this lawsuit that you are currently defending?
A. Yes. Correct.

Q. This is what you discussed with Peter and Steven and Winnie?
A. Correct.

Q. Did you also discuss with Peter and Steven and Winnie the change in Cindy's pay?
A. Of course there is change to the wages because of the payment method has became from a flat rate changing to hourly rate.

Q. Basically, you discussed the change in Cindy's schedule and her hourly rate with Steven and Winnie and Peter?
A. Yes.

**Deposition of Steven C.J. Tang**

| | |
|---|---|
| 40:14-41:5<br>42:19-43:14 | Q. ...When is the last time you can recall that all the shareholders had a meeting?<br>A. It is not really a shareholder meeting. It is more like people who manages or has a part in managing the restaurant, we will meet.<br><br>Q. So, usually, when you are talking about these meetings, it is you and Peter and Winnie and Douglas and Benny, correct?<br>A. Yes.<br><br>Q. Where would these meetings be held usually?<br>A. In the beginning, we would host it in Chef Yu. And currently, we are hosting it on 77th Street and Amsterdam Avenue in a restaurant... |

16

| | |
|---|---|
| | Q. What do you guys discuss at the meetings?<br>A. We mostly talked about the operational stuff, about the restaurant. And we are not really tight or serious. We are more of a conversation or discussion.<br><br>Q. So, when you say the operations of the restaurant, can you just give me a few examples.<br>A. Like the pricing of the restaurant. Like preparations for the Health Department inspections. In most cases, there aren't many things to talk about. Most.<br><br>Q. How often do you hold these meetings?<br>A. Once a month.<br><br>Q. Do you ever talk about any other restaurant besides Chef Yu?<br>A. Yes.<br><br>Q. Which one?<br>A. Ginger's. |
| 68:3-15 | Q. Do you know who decided to promote Douglas to be the manager of Chef Yu?<br>A. I think it was Peter.<br><br>Q. Did you have any input in that decision?<br>A. No. I was not involved, because I was not involved in any work with Ginger and Douglas worked for Benny for a year. Once he knew about that we were going start another restaurant next to Ginger, he just volunteered to be the manager and then he went through Benny. Benny went through Peter and Peter agreed; that is how it happened. |
| 74:7-12 | Q. What time does the late shift leave?<br>A. Normally, they leave at 10:30. But sometimes, maybe a quarter after that, which is 10:45, the latest. Maybe like once in a year or once for a long time, maybe, they leave at like 11:00. |
| 80:18-25 | A. Basically, I just get information regarding labor laws from the attorney during the time.<br>Q. Who was that attorney?<br>A. Jenny Shen. One is called Larry. I don't know the last name. Peter hired him. He was hired by Peter. Larry, I don't know the last name. |
| 95:8-15 | A. So, before I came in 2006, during the busy hours, which is lunchtime, the packer would not be doing packing work; it would be helping the servers do service work.<br>Q. When you came in 2016, you changed that so that the packer was only doing packing work?<br>A. Correct. |
| 109:1-16 | Q. When did you put a time clock in? |

17

|  | A. Three to four months or four to five 4 months. I am not very sure of the number. Because I thought of that, we should have it. So, I had it installed.<br><br>Q. When you say, "Three to four months or four to five months," is that three to four or four to five months ago?<br>A. Yes. Three to four months or four to five months ago.<br><br>Q. So, approximately, like March or April of 2018?<br>A. I can't be sure.<br><br>Q. But approximately?<br>A. Yes, approximately. |
|---|---|
| 120:6-18 | Q. Were servers always paid an hourly wage or were they ever paid a salary?<br>A. So, since before 2013, August -- before August of 2013 we didn't know anything about labor law. Would just follow the market. Usually people pay how much and we will pay monthly how much the waiter would get paid. But after August of 2013, then we started going by the labor law.<br><br>Q. So, prior to August of 2013, servers would just get flat salary; is that correct?<br>A. Yes. They would get their base amount. |
| 123:10-20 | Q. ...I am saying that if I came into your restaurant and I ate and I took off without paying the check, would the server have to pay for the meal if I left without paying for it?<br>A. Yes. Because it is their responsibility to present the check and to collect whatever it is, cash or credit card to collect it back from the customer. And also, it prevents them from taking cash on their own for themselves. That is what the restaurant would do. |
| 139:14-20 | A. So, each person will have their own schedule. So, everyone knows their weekly schedule. So, let's say this particular person works 38 hours, supposedly, they scheduled 38 hours of work this week. If nothing else has happened, then this is what the hours will be for him for the week. |

**Deposition transcript of Su Jin Teo (Douglas)**

| 32:5-13 | Q. We spoke about the responsibility that you had as manager of Chef Yu which included scheduling and training the servers, packers, cashiers, and delivery workers; is that right?<br>A. Yes.<br><br>Q. Did you ever share these responsibilities with any other employee?<br>A. Yes.<br><br>Q. Who else did you share these responsibilities with?<br>A. Benny. |
|---|---|

| 35:8-13 | Q. Who made the decision to give you a raise at the times that you received a raise?<br>A. Shareholders.<br><br>Q. Was that all the shareholders of Chef Yu or only some?<br>A. All. |
|---------|---|
| 91:19-25 | Q. Did the servers fill in every day that they worked or did they wait and fill it out after they had already worked for the entire month?<br>A. Very few of them would fill in every day. Normally they would fill in every three to five days. |
|  |  |

9) **A list by each party of exhibits to be offered in its case in chief, with a description of the type of objection, if any, for each exhibit.**

*Plaintiffs' Trial Exhibits*

| 1 | Eng Bock Chia - Payroll Records | CHIA CHEF YU 0002 – 0054 |
|---|---|---|
| 2 | Eng Bock Chia - Employee Record from August 2013 | CHIA CHEF YU 0128 |
| 3 | Eng Bock Chia - Pay Acknowledgments and Timesheets | CHIA CHEF YU 0056 - 0127 |
| 4 | Yue Ming (Wendy) Lin - Payroll Records | CHIA CHEF YU 0002 – 0040 |
| 5 | Yue Ming (Wendy) Lin - Employee Record from August 2013 | LIN CHEF YU 0109 |
| 6 | Yue Ming (Wendy) Lin - Pay Acknowledgments and timesheets | LIN CHEF YU – 0041 - 0108 |
| 7 | Rui Gui (Annie) Wu - Payroll Records | WU CHEF YU 0001 – 0067 |
| 8 | Rui Gui (Annie) Wu - Employee Record from August 2013 | WU CHEF YU 0140 |
| 9 | Rui Gui (Annie) Wu - Pay Acknowledgements and timesheets | WU CHEF YU 0069 – 0139 |
| 10 | Wai Ho Ng - Payroll Records | NG CHEF YU 0001 – 0038 |
| 11 | Wai Ho Ng Pay Acknowledgements and Timesheets | NG CHEF YU 0040 – 0094 |
| 12 | Xin Quiang (Kenny) Yu - Payroll Records | NG CHEF YU 0001 – 0068 |
| 13 | Xin Quiang (Kenny) Yu - Employee Record August 2013 | YU CHEF YU 0151 |

| 14 | Xin Quiang (Kenny) Yu - pay acknowledgements and timesheets | YU CHEF YU 0070 – 0150 |
|----|-----|-----|
| 15 | Jian Wei (Kent) Xu - Payroll Records | XU CHEF YU 0001 – 0054 |
| 16 | Jian Wei (Kent) Xu - Employee Record August 2013 | XU CHEF YU 0091 |
| 17 | Jian Wei (Kent) Xu - pay acknowledgements and timesheets | XU CHEF YU 0055 – 0090 |
| 18 | Grace Wu - payroll records | WU GINGERS 0001 – 0025 |
| 19 | Grace Wu - pay acknowledgments | WU GINGERS 0049 – 0050 |
| 20 | Cindy Lin - Payroll records | LIN GINGERS 0001 – 0037 |
| 21 | Cindy Lin - Pay acknowledgements and timesheets and schedule | LIN GINGERS 0039 – 0046; Lin 000019 |
| 22 | Cindy Lin – photographs taken with cell phone of workers being paid with cash Bates Nos. CLIN 0021 and 0026 | CLIN 0021, 0026 |
| 23 | NLRB Charge and Cindy Lin Paperwork | CHIA-0074 – 0076; CLIN 0030 – 0032 |
| 24 | Gui Xiang Dong - Payroll Records | DONG GINGERS 0001 – 0012 |
| 25 | Gui Xiang Dong - Employee Record August 2013 | DONG GINGERS 0086 |
| 26 | Gui Xiang Dong - Pay acknowledgments and timesheets | DONG GINGERS 0014 – 0085 |
| 27 | Kok Hing Chin - Payroll Records | CHIN GINGERS 0002 – 0034 |
| 28 | Kok Hing Chin - Employee Record August 2013 | CHIN GINGERS 0255 |
| 29 | Kok Hing Chin - Pay Acknowledgments and Timesheets | CHIN GINGERS 0049 – 0254 |
| 30 | CHEF YU 0001 Employee Employment  History | CHEF YU 0001 |
| 31 | Plaintiffs' Second Amended Complaint | P000124 - 000157 |
| 32 | Defendants' Answer to Second Amended Complaint | P000158 - 000175 |
| 33 | Defendants' Rule 26 Disclosures | P000176 - 000181 |
| 34 | Defendants' Responses to Plaintiffs' Requests for Production | P000182 - 000196 |
| 35 | Defendants' Responses to Plaintiffs' First Set of Interrogatories | P000197 - 000207 |
| 36 | Incorporation Records for Corporate Defendants | CHEF YU 0002 – 0013 |
| 37 | GINGERS-Lease Termination & Surrender Agrmnt | GINGERS LEASE TERM 0001 – 0008 |
| 38 | Chen Wha (David) Cheng Deposition Exhibit 2 | P000208 - 000219 |
| 39 | Chen Wha (David) Cheng Deposition Exhibit 3 | P000220 - 000232 |

| 40 | Chen Wha (David) Cheng Deposition Exhibit 6 | CHIA-0001; YMLIN 0004 |
|----|----|----|
| 41 | Trial opinion and order from Yan v. 520 Asian Rest. Corp._ 2014 U.S. Dist. LEXIS 174259 (S.D.N.Y. Dec. 17, 2014) | P000233 – 000242 |
| 42 | IRS Letter to 520 Asian Rest. Corp. | P000109 – 123 |
| 43 | Plaintiffs' Damage Calculation Spreadsheets, including spreadsheets compiling payroll records produced by Defendants | P000243 - 000337 |
| 44 | Wai Ho Ng - W-2 Forms | NG CHEF YU 0006 – 0039 |
| 45 | Rui Gui (Annie) Wu - W-2 Forms | WU CHEF YU 0027 – 0068 |
| 46 | Jian Wei (Kent) Xu - W-2 Forms | XU CHEF YU 0014 – 0050 |
| 47 | Xin Quiang (Kenny) Yu - W-2 Forms | YU CHEF YU 0027 – 0069 |
| 48 | Grace Wu - W-2 form | WU GINGERS 0026 |
| 49 | Yue Xian (Cindy) Lin - W-2 Forms | LIN GINGERS 0012 – 0038 |
| 50 | Gui Xiang Dong - W-2 forms | DONG GINGERS 0007 – 0013 |
| 51 | Kok Hing Chin - W-4 Form filled out and 1099 Forms | CHIN GINGERS 0001 – 0026 |
| 52 | Yue Ming (Wendy) Lin - 1099 forms | LIN CHEF YU 0001 – 0028 |
| 53 | Eng Bock Chia - 1099 and W-2 Forms | CHIA CHEF YU 0001 - 0055 |

*Defendants' Trial Exhibits*

| Exhibit No. | Description | Bates No. |
|----|----|----|
| 1 | Eng Bock Chia – 1099s & W-2s | CHIA CHEF YU 0001<br>CHIA CHEF YU 0022<br>CHIA CHEF YU 0033<br>CHIA CHEF YU 0044<br>CHIA CHEF YU 0055 |
| 2 | Eng Bock Chia – Payroll History Reports | CHIA CHEF YU 0002-0008<br>CHIA CHEF YU 0009-0014<br>CHIA CHEF YU 0015-0021<br>CHIA CHEF YU 0023-0032<br>CHIA CHEF YU 0034-0043<br>CHIA CHEF YU 0045-0054 |
| 3 | Eng Bock Chia – Pay Acknowledgments | CHIA CHEF YU 0059-0062<br>CHIA CHEF YU 0116-0120<br>CHIA CHEF YU 0125-0127 |

| 4 | Eng Bock Chia – Timesheets | CHIA CHEF YU 0063-0115<br>CHIA CHEF YU 0120-0124 |
|---|---|---|
| 5 | Eng Bock Chia – Pay Stubs | CHIA 0001-0072 |
| 6 | Eng Bock Chia – Employee Record | CHIA CHEF YU 0128 |
| 7 | Yue Ming Lin – 1099s | LIN CHEF YU 0001<br>LIN CHEF YU 0007<br>LIN CHEF YU 0017<br>LIN CHEF YU 0028 |
| 8 | Yue Ming Lin – Payroll History Reports | LIN CHEF YU 0002-0006<br>LIN CHEF YU 0008-0016<br>LIN CHEF YU 0018-0027<br>LIN CHEF YU 0029-0040 |
| 9 | Yue Ming Lin – Pay Acknowledgments | LIN CHEF YU 0044-0045<br>LIN CHEF YU 0046-0047<br>LIN CHEF YU 0048-0050<br>LIN CHEF YU 0056-0059<br>LIN CHEF YU 0071-0075<br>LIN CHEF YU 0089-0092<br>LIN CHEF YU 0105-0106 |
| 10 | Yue Ming Lin - Timesheets | LIN CHEF YU 0051-0055<br>LIN CHEF YU 0060-0070<br>LIN CHEF YU 0076-0088<br>LIN CHEF YU 0093-0104<br>LIN CHEF YU 0107-0108 |
| 11 | Yue Ming Lin – Pay Stubs | YMLIN 0005-0064 |
| 12 | Yue Ming Lin – Employee Record | LIN CHEF YU 0109 |
| 13 | Wai Ho Ng – Payroll History Reports | NG CHEF YU 0001-0005<br>NG CHEF YU 0007-0017<br>NG CHEF YU 0019-0028<br>NG CHEF YU 0030-0037 |
| 14 | Wai Ho Ng – W-2s | NG CHEF YU 0006, 0018,<br>0029, 0039 |
| 15 | Wai Ho Ng – Pay Acknowledgments | NG CHEF YU 0040-0041<br>NG CHEF YU 0047-0050<br>NG CHEF YU 0062-0066<br>NG CHEF YU 0080-0082 |
| 16 | Wai Ho Ng – Timesheets | NG CHEF YU 0042-0046<br>NG CHEF YU 0051-0061<br>NG CHEF YU 0067-0079<br>NG CHEF YU0083-0094 |
| 17 | Wai Ho Ng – Pay Stubs | NG 0001-0047 |
| 18 | Rui Gui Wu – Payroll History Reports | WU CHEF YU 0001-0013<br>WU CHEF YU 0014-0026<br>WU CHEF YU 0028-0035<br>WU CHEF YU 0037-0046<br>WU CHEF YU 0048-0057 |

| | | WU CHEF YU 0059-0067 |
|---|---|---|
| 19 | Rui Gui Wu – W-2s | WU CHEF YU 0027 |
| | | WU CHEF YU 0036 |
| | | WU CHEF YU 0047 |
| | | WU CHEF YU 0058 |
| | | WU CHEF YU 0068 |
| 20 | Rui Gui Wu – Timesheets | WU CHEF YU 0078-0082 |
| | | WU CHEF YU 0088-0098 |
| | | WU CHEF YU 0103-0115 |
| | | WU CHEF YU 0120-0132 |
| | | WU CHEF YU 0136-0139 |
| 21 | Rui Gui Wu – Pay Acknowledgments | WU CHEF YU 0071-0072 |
| | | WU CHEF YU 0073-0074 |
| | | WU CHEF YU 0075-0077 |
| | | WU CHEF YU 0083-0087 |
| | | WU CHEF YU 0099-0102 |
| | | WU CHEF YU 0116-0119 |
| | | WU CHEF YU 0133-0135 |
| 22 | Rui Gui Wu – Pay Stubs | RGWU 0001-0066 |
| 23 | Rui Gui Wu – Employee Record | WU CHEF YU 0140 |
| 24 | Jian Wei Xu – Payroll History Reports | XU CHEF YU 0001-0013 |
| | | XU CHEF YU 0015-0028 |
| | | XU CHEF YU 0030-0038 |
| | | XU CHEF YU 0040-0049 |
| | | XU CHEF YU 0051-0054 |
| 25 | Jian Wei Xu – W-2s | XU CHEF YU 0014 |
| | | XU CHEF YU 0029 |
| | | XU CHEF YU 0039 |
| | | XU CHEF YU 0050 |
| 26 | Jian Wei Xu – Pay Acknowledgments | XU CHEF YU 0058-0059 |
| | | XU CHEF YU 0060-0061 |
| | | XU CHEF YU 0062-0064 |
| | | XU CHEF YU 0070-0073 |
| | | XU CHEF YU 0085-0086 |
| 27 | Jian Wei Xu – Timesheets | XU CHEF YU 0065-0069 |
| | | XU CHEF YU 0074-0084 |
| | | XU CHEF YU 0087-0090 |
| 28 | Jian Wei Xu – Employee's Record | XU CHEF YU 0091 |
| 29 | Xin Qiang Yu – Payroll History Reports | YU CHEF YU 0001-0016 |
| | | YU CHEF YU 0017-0026 |
| | | YU CHEF YU 0028-0035 |
| | | YU CHEF YU 0037-0045 |
| | | YU CHEF YU 0047-0058 |
| | | YU CHEF YU 0060-0068 |
| 30 | Xin Qiang Yu – W-2s | YU CHEF Y 0027 |
| | | YU CHEF YU 0036 |

| | | |
|---|---|---|
| | | YU CHEF YU 0046<br>YU CHEF YU 0059<br>YU CHEF YU 0069 |
| 31 | Xin Qiang Yu – Pay Acknowledgments | YU CHEF YU 0076-0078<br>YU CHEF YU 0079-0080<br>YU CHEF YU 0081-0083<br>YU CHEF YU 0089-0092<br>YU CHEF YU 0104-0107<br>YU CHEF YU 0121-0125<br>YU CHEF YU 0139-0143 |
| 32 | Xin Qiang Yu – Timesheets | YU CHEF YU 0084-0088<br>YU CHEF YU 0093-0103<br>YU CHEF YU 0108-0120<br>YU CHEF YU 0126-0138<br>YU CHEF YU 0144-0150 |
| 33 | Xin Qiang Yu – Pay Stubs | YU 0001-0047 |
| 34 | Xin Qiang Yu – Employee's Record | YU CHEF YU 0151 |
| 35 | Chef Yu – Employee Employment History | CHEF YU 0001 |
| 36 | Kok Hing Chin – 1099s & W-4 | CHIN GINGERS 0001<br>CHIN GINGERS 0007<br>CHIN GINGERS 0017<br>CHIN GINGERS 0026<br>CHIN GINGERS 0088 |
| 37 | Kok Hing Chin – Payroll History Reports | CHIN GINGERS 0002-0006<br>CHIN GINGERS 0008-0016<br>CHIN GINGERS 0018-0025<br>CHIN GINGERS 0027-0034 |
| 38 | Kok Hing Chin – Pay Acknowledgments | CHIN GINGERS 0063-0065 |
| 39 | Kok Hing Chin – Timesheets | CHIN GINGERS 0066-0087<br>CHIN GINGERS 0089-0140<br>CHIN GINGERS 0141-0190<br>CHIN GINGERS 0191-0241<br>CHIN GINGERS 0242-0254 |
| 40 | Kok Hing Chin – Pay Stubs | HING 0001-0030 |
| 41 | Kok Hing Chin – Employee's Record | CHIN GINGERS 0255 |
| 42 | Gui Xiang Dong – Payroll History Reports | DONG GINGERS 0001-0006<br>DONG GINGERS 0008-0012 |
| 43 | Gui Xiang Dong – W-2s & W-4s | DONG GINGERS 0007<br>DONG GINGERS 0013<br>DONG GINGERS 0036 |
| 44 | Gui Xiang Dong – Pay Acknowledgments & Timesheets | DONG GINGERS 0014-0035<br>DONG GINGERS 0037-0085 |
| 45 | Gui Xiang Dong – Pay Stubs | DONG 0001-0013 |
| 46 | Gui Xiang Dong – Employee's Record | DONG GINGERS 0086 |
| 47 | Cindy Lin – Payroll History Reports | LIN GINGERS 0001-0004<br>LIN GINGERS 0005-0011 |

| | | LIN GINGERS 0013-0018 |
|---|---|---|
| | | LIN GINGERS 0020-0024 |
| | | LIN GINGERS 0026-0031 |
| | | LIN GINGERS 0033-0037 |
| 48 | Cindy Lin – W-2s | LIN GINGERS 0012 |
| | | LIN GINGERS 0019 |
| | | LIN GINGERS 0025 |
| | | LIN GINGERS 0032 |
| | | LIN GINGERS 0038 |
| 49 | Cindy Lin – Pay Acknowledgments | LIN GINGERS 0039 |
| | | LIN GINGERS 0040 |
| | | LIN GINGERS 0041 |
| | | LIN GINGERS 0042 |
| | | LIN GINGERS 0043 |
| | | LIN GINGERS 0044 |
| | | LIN GINGERS 0046 |
| 50 | Cindy Lin – Pay Stubs | CLIN 0001-0017 |
| 51 | Cindy Lin – Kitchen Schedule | LIN GINGERS 0045 |
| 52 | Grace Wu – Payroll History Reports | WU GINGERS 0001-0012 |
| | | WU GINGERS 0013-0025 |
| 53 | Grace Wu – W-2s | WU GINGERS 0026 |
| 54 | Grace Wu – Pay Acknowledgments | WU GINGERS 0049 |
| | | WU GINGERS 0050 |
| 55 | Grace Wu – Pay Stubs | GWU 0001-0005 |
| 56 | Plaintiffs' Second Amended Complaint | |
| 57 | Defendants' Answer to Second Amended Complaint | |
| 58 | Plaintiffs' Rule 26 Disclosures | |

**10) A statement of damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.**

Plaintiffs allege that Defendants failed to pay them proper minimum wages, overtime wages, spread of hours, made unlawful deductions from their pay, unlawfully retained their tips and gratuities, failed to provide them legally required notices, and failed to reimburse them for the costs of uniform maintenance. Plaintiff Cindy Lin also alleges that she was retaliated against in violation of New York Labor Law § 215(1)(a) for filing the instant lawsuit. Plaintiffs refer the Court to Plaintiffs' Trial Exhibit 43, which contains spreadsheets for each Plaintiff with damage calculations. Plaintiffs also refer the Court to the direct examination declaration testimony of Irayda Perez explaining the spreadsheets and the method used to calculate damages.

**11) A statement of whether the parties consent to less than a unanimous verdict.**

Not applicable as this is a bench trial.

Dated:  New York, New York
         September 3, 2019

                      VIRGINIA & AMBINDER, LLP

By:        s/LaDonna M. Lusher
                      LaDonna M. Lusher, Esq.
                      Kara S. Miller, Esq.
                      Michele A. Moreno, Esq.
                      40 Broad Street, Seventh Floor
                      New York, New York 10004
                      Tel:    (212) 943-9080
                      Fax:    (212) 943-908
                      llusher@vandallp.com

                      TAKEROOT JUSTICE
                      S. Tito Sinha, Esq.
                      Farrell A. Brody, Esq.
                      Eliseo Cabrera, Esq.
                      123 William Street, Sixteenth Fl.
                      New York, New York 10038
                      Tel:    (646) 459-3020
                      Fax:    (212) 533-4598
                      tsinha@takerootjustice.org

                      *Attorneys for the Plaintiffs*

                      HEREBERT LAW GROUP LLC
                      John T. Herbert, Esq.
                      96 Engle Street
                      Englewood, NJ 07631
                      Tel: (201) 490-4070
                      Fax: (201) 490-4077
                      jherbert@herbertlawllc.com

                      J. SHEN LAW FIRM, LLC
                      Jenny Shen, Esq.
                      580 Sylvan Avenue, Suite M-G
                      P.O. Box 1562
                      Englewood Cliffs, New Jersey 07632
                      Tel: (201) 227-8700
                      Fax: (201) 227-8701
                      jshen@jshenlaw.com

                      *Attorneys for Defendants*