UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENG BOCK CHIA, RUI GUI WU, YUE MING LIN, GRACE WU, CINDY LIN, XIN QIANG YU, GUI XIANG DONG, CHIN KOK HING, WAI HO NG, JIANWEI XU, and WONG KAM FOONG, <br><br>                                            Plaintiffs,<br><br>- against -<br><br>520 ASIAN RESTAURANT CORP. d/b/a CHEF YU, 5127 RESTAURANT CORP. d/b/a GINGER'S, TUNG SHENG YEH, STEVEN C.J. TANG, ALICE TANG, KUAN YOKE AKOON aka "WINNIE," TEO SU JIN, BENNY CHEONG<br><br>                                            Defendants. | Docket No.: 17-CV-5885(GHW) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE

VIRGINIA & AMBINDER, LLP
LaDonna M. Lusher, Esq.
Kara S. Miller, Esq.
Michele A. Moreno, Esq.
40 Broad Street, Seventh Floor
New York, New York 10004
Tel:   (212) 943-9080
Fax:  (212) 943-908
llusher@vandallp.com

TAKEROOT JUSTICE
S. Tito Sinha, Esq.
Farrell A. Brody, Esq.
Eliseo Cabrera, Esq.
123 William Street, Sixteenth Floor
New York, New York 10038
Tel:   (646) 459-3020
Fax:  (212) 533-4598
tsinha@takerootjustice.org

*Attorneys for the Plaintiffs*

**PRELIMINARY STATEMENT**

Plaintiffs, by their attorneys, Virginia & Ambinder, LLP and TakeRoot Justice, submit this Memorandum of Law in support of their Motions *in Limine*. Specifically, Plaintiffs request an Order: (1) imposing a shift of the burden of proof to Defendants on the issue of the hours worked and wages received while working for Defendants, in light of Defendants' failure to keep and/or otherwise maintain documents required by law that would enable the Court or jury to determine damages with complete accuracy, (2) holding that Defendants' admissions in its Answer are binding, together with such other relief as to the Court may deem just and proper.

**ARGUMENT**

**I.  This Court Should Impose a Shift of the Burden of Proof to Defendants on the Issue of Damages**

    **A.  Legal Standard**

Under New York Labor Law, an employer has the statutory burden of generating and maintaining accurate payroll records. New York Labor Law § 661 (requiring employers to establish and maintain payroll records "showing for each week worked the hours worked, the rate or rates of pay and basis thereof"); N.Y. Codes R. & Regs, 12 § 146-2.1 (requiring that employers establish and retain, for not less than six years, weekly payroll records which show the hours worked for each employee, including "the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10."); 29 U.S.C. § 211(c) (requiring that every employer "make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him"); 29 C.F.R. § 516.2(a)(7) (requiring that employers maintain records of "[h]ours worked each workday and total hours worked each workweek");

In light of an employer's unequivocal burden to generate and retain reliable records, the

U.S. Supreme Court has established that "where the employer's records are inaccurate or inadequate," workers need only make a minimal showing of underpayments before the burden of proof shifts to the employer:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces *sufficient evidence* to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with the evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (emphasis added).

Plaintiffs' burden is not "overly onerous;" instead, Plaintiffs must produce "sufficient evidence" to establish that they were underpaid "as a matter of just reasonable inference." *Reich v. Southern New England Telecommunications Corp.,* 121 F. 3d 58, 67 (2d Cir. 1997). In fact, a plaintiff can satisfy this lesser burden by "relying on recollection alone." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372 (E.D.N.Y. 2012). As noted by the Supreme Court, where an employer's records are inadequate, "the employer cannot be heard to complain that the damages lack the exactness and precious of measurement that would be possible had he kept records." *See Rivera v. NDOLA Pharmacy Corp.,* 497 F. Supp. 2d 381, 389 (E.D.N.Y. 2007), *citing Mt. Clemens,* 328 U.S. at 688. *See also Doo Nam Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (plaintiff's estimates of work hours constituted sufficient evidence). Relying on employee memory is proper where, as here, an employer lacks sufficient records, as employers may not "benefit from their failure" to maintain the requisite records. *Id*. at 335 (*citing Mumbower v. Callicott*, 526 F.2d 1183, 1196 (8th Cir. 1975)).

New York law goes further and mandates that employers who fail to retain accurate records "bear the burden of proving that the complaining employee was paid wages." N.Y. Lab. Law §

2

196-a; *see* N.Y. Lab. Law § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6(a)(4). Moreover, once the plaintiff meets this lesser burden of proof, the employer must meet the stringent burden of showing "by a preponderance of the evidence" that the employee was properly paid. *Berrios*, 2012 U.S. Dist. LEXIS 43290, *15, *quoting Padilla v. Manlapaz,* 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009); see also *Cardona v. Maramont Corp.*, 993 N.Y.S.2d 643 (N.Y. Sup. Ct. 2014) ("Where an employer has failed to maintain proper records, wage underpayments may be calculated by reference to the best evidence available, and the burden shifts to the employer to negate the reasonableness of the calculations.") (*citing Thomas v. Meyers Assoc., L.P.*, 2013 N.Y. Misc. LEXIS 1680, *13-14 (N.Y. Sup. Ct 2013)). Indeed, the underpayment "may be based upon the testimony of employees." *Cardona* at 643 (*citing Nowicki v. Forward Ass'n*, 281 A.D. 5 (1st Dept. 1952)).

### B. Defendants Failed to Keep Accurate Payroll and Time Records During all Relevant Times of Plaintiffs' Employment

During discovery of this action, Defendants responded to document demands served by Plaintiffs. [See Plaintiffs' Trial Exhibit 7.] These document demands included, *inter alia*, requests for Defendants to produce all payroll and time records for each of the Plaintiffs. [*See e.g.* Plaintiffs' Trial Exhibit 7, ¶¶ 4, 6, 13, 18, 22.] Payroll and time records produced by Defendant are included as trial exhibits by the parties.

#### i. Before August 2013

Prior to August of 2013, Defendants paid Plaintiffs a flat salary and did not pay Plaintiffs hourly. [See Joint Stipulated Fact 32.] Defendants maintained and produced some pay acknowledgment records showing the flat salary that was paid to Plaintiffs. [See e.g., Plaintiffs' Trial Exhibit 19, Grace Wu Pay Acknowledgements.] However, Defendants did not produce, and

3

did not maintain, time records during this period.[1]

<u>After August 2013</u>

After August of 2013, Defendants began maintaining some payroll and time records. However, both the payroll records and time records are not always complete, and some weeks are missing. Moreover, the time records that were kept reflect the Plaintiffs' *scheduled* work hours, not the exact time work began and ended. [See Direct Testimony Declarations Chia Aff. ¶ 47; Ming Lin Aff. ¶¶ 45, 55 ; Yu Aff. ¶ 42; Dong Aff. ¶ 34; Hing Aff. ¶¶ 37, 46; Ng Aff. ¶ 19; Xu Aff. ¶ 37; Gui Wu Aff. ¶¶ 45, 53; Cindy Lin 33, 43.] Defendant Steven C.J. Tan*g* testified that payroll worked as follows: "So, each person will have their own schedule. So, everyone knows their weekly schedule. So, let's say this particular person works 38 hours, supposedly, they scheduled 38 hours of work this week. If nothing else has happened, then this is what the hours will be for him for the week." [Dep. Transcript of Steven C.J. Tang, 139:14-20.] Defendant Su Jin Teo ("Douglas") testified that when workers filled out the time sheets, he knew that "[v]ery few of them would fill in every day. Normally they would fill in every three to five days.") [Dep. transcript of Su Jin Teo 91:19-25.]

As can be seen when reviewing the time records for each of the Plaintiffs, the start and end times shown are always exactly on the hour or half hour. [See Plaintiffs' Trial Exhibits 3, 6, 9, 11, 14, 17, 21, 26, 29.] Defendants did not utilize any kind of time clock to track the exact working

---

[1] For example, Defendant Benny Cheong testified at his deposition as follows:

> Q. Prior to 2013, did the restaurant record the hours [worked by employees]?
> A. No, but they have their schedule. So, they know how many hours they have worked.

[Dep. Transcript of Benny Cheong, 91:5-9.]

4

hours for Plaintiffs.[2] While the time difference between one's scheduled hours and one's actual hours worked was not typically substantial, and Plaintiffs are not claiming additional compensation for off the clock work, the time difference is important for determining Plaintiffs' entitlement to spread of hours pay because Defendants had a habit of scheduling Plaintiffs for shifts of exactly 10 hours. Spread of hours pay is required when ones' spread is more than 10 hours. Thus, this small difference in time, perhaps 15 to 30 minutes, would entitle Plaintiffs to spread of hours pay on days they were scheduled for 10 hours.

Since Defendants failed to keep accurate records during all relevant time periods, the best evidence of the missing information is Plaintiffs' recollection of the hours they worked and the wages they received. In light of the foregoing, a burden shift prior to trial is proper to advise the parties of the necessary evidence required during trial. *See Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 267-71 (S.D.N.Y. 2015) (confirming burden shift to defendants for failing to keep accurate records of dancers defendants alleged were independent contractors in motion *in limine*); *Hernandez v. NJK Contrs., Inc.*, 2015 U.S. Dist. LEXIS 57568, *4 (E.D.N.Y. 2015) ("[b]ecause of the undisputed inadequacy of defendants' records, plaintiffs here will enjoy the benefit of the *Mt. Clemens Pottery* burden shift at trial.").

## II. Defendants Admissions in Its Answer Should Be Deemed Binding Judicial Admissions

Plaintiffs filed a second amended complaint ("SAC") on September 18, 2017. [Docket No. 18.] Defendants submitted an answer on October 26, 2017. [Docket No. 28.] The following admissions were made in Defendants' Answer:

---

[2] It was not until approximately March or April of 2018 that Chef Yu first began using a time clock to track employees' hours. [Dep. Transcript of Steven C.J. Tang at 109:1-16.]

**Defendants' Answer ¶1**: …Defendants admit that Tung Sheng Yeh, Steven Tang, Teo Su Jin and Benny Cheong are the sole owners of 520 ASIAN RESTAURANT CORP. d/b/a CHEF YU and 5127 RESTAURANT CORP. d/b/a GINGER'S…

**Defendants' Answer ¶2:** With respect Paragraph 2 of the Complaint, Defendants deny that they "operate a single integrated business" consisting of two restaurants CHEF YU and GINGER'S but admit that they, with the exception of Alice Tang and the alleged John Does, share ownership in both restaurants….

**Defendants' Answer ¶15:** Defendants admit the allegations of Paragraph 15 of the Complaint. (SAC ¶15 "At all relevant times, Plaintiffs were Defendants' employees within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), Articles 6 and 19 of the NYLL, and 12 NYCRR § 146.)

**Defendants' Answer ¶18**: Defendant Steven C.J. Tang admits the allegations of Paragraph 18 of the Complaint. (SAC ¶18 "Defendant Steven C.J. Tang is a resident of Bergen County, New Jersey, and at all relevant times was an officer, director, and/or owner of Defendant Restaurants. As of the filing of this complaint, Defendant Steven C.J. Tang is listed as Chief Executive Officer of Defendant Ginger's in the New York State Department of State's Division of Corporation's entity information database. On information and belief, at all relevant times Defendant Steven C.J. Tang exercised operational control over both Defendant Restaurants.")

**Defendants' Answer ¶80:** Defendants admit that employees were required to wear restaurant and job appropriate attire while working at Chef Yu and Ginger's.

**Defendants' Answer ¶81:** Defendants admit that [sic] the allegations of 81 of the Complaint. (SAC ¶81: Plaintiffs who worked at Defendant Chef Yu were given 1 to 2 sets of uniforms by the Defendants. Plaintiffs purchased additional sets at their own expense.")

**Defendants' Answer ¶85:** Defendants admit the allegations of Paragraph 85 except to deny that Alice Tang[3] was an officer or director, manager, owner, supervisor or agent of the Defendants and had not authority to hire, fire, supervise, and control employee work schedules, conditions of employment, rates and/or methods of payment or the maintenance of records. (SAC ¶85:"Upon information and belief, Individual Defendants are officers, directors, managers, owners, supervisors and/or agents of Defendant Restaurants, and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or

---

[3] Plaintiffs also filed a Third Amended Complaint that removed Alice Tang as an individual Defendant and added the legal name for Defendant Kuan Yoke Akoon aka "Winnie" who was previously identified as Jane Doe aka "Winnie". Defendants never filed a formal answer to the third amended complaint.

conditions of employment, (3) determined the rate and method of payment for employees, and (4) maintained employment records.")

**Defendants' Answer ¶86:** Defendants admit the allegations of Paragraph 86 except to deny that Alice Tang is or was ever a principle and/or owner of Defendant Restaurants. (SAC ¶86: "Upon information and belief, Individual Defendants are the principles and owners of Defendant Restaurants, centrally controlled and dominated the day-to-day operating decisions of Defendant Restaurants, and made major personnel decisions for Defendant Restaurants.")

**Defendants' Answer ¶89**: Defendants admit that except for Alice Tang, Defendants manage all aspects of either Chef Yu's or Ginger's restaurant. Defendants deny that Alice Tang has any managerial responsibility over either Chef Yu's or Ginger's restaurant. Defendants deny that Alice Tang manages or has any authority over employees at either restaurant as alleged in Paragraph 89 of and elsewhere within the Complaint. (SAC ¶89: "Individual Defendants maintain centralized control over all labor relations and operations of the Defendant Restaurants.")

**Defendants' Answer ¶92:** Defendants admit the allegations of Paragraph 92 of the Complaint. (SAC ¶92: "Defendants maintain websites for each of the Defendant Restaurants. Upon information and belief, Defendant Restaurant's websites were both registered, and are updated and maintained by an individual named Raymond Chan as reflected by records maintained by the Internet Corporation for Assigned Names and Numbers.")

**Defendants' Answer ¶93:** Defendants admit the allegations of Paragraph 92 of the Complaint. (SAC ¶93: "Upon information and belief, Defendant Steven C.J. Tang is the signor of the leases for both the Defendant Restaurants.")

**Defendants' Answer ¶94:** Defendants admit the allegations of Paragraph 92 of the Complaint. (SAC ¶94: "Defendants Steven C.J. Tang and Tung Shen Yeh are listed as principals for both Defendant Restaurants on the liquor licenses maintained by the New York State Liquor Authority.")

**Defendants' Answer ¶95:** Defendants admit the allegations of Paragraph 92 of the Complaint. (SAC ¶95: "On information and belief, at all relevant times, Defendants Steven C.J. Tang and Tung Shen Yeh hired all managers for Defendant Restaurants.")

**Defendants' Answer ¶96:** Defendants admit the allegations of Paragraph 96 except to deny Alice Tang and Jane Doe never participated in such meetings as an owner or manager of either Chef Yu or Ginger's Restaurant. (SAC ¶96: "Defendants Steven C.J. Tang, Alice Tang, Tung Shen Yeh, and Jane Doe supervised the managers and held regular meetings with them and other shareholders of Defendant Restaurants at Chef Yu to, on information and belief,

ensure that all delegated procedures and policies were enforced as dictated by the Defendants Steven C.J. Tang, Alice Tang, Tung Shen Yeh, and Jane Doe, and to discuss the restaurants' sales.")

**Defendants' Answer ¶97:** Defendants admit the allegations of Paragraph 97 of the Complaint except to deny Jane Doe never assisted in the management of Ginger's Restaurant when Benny Cheong was away from the business. (SAC ¶97: "During the relevant time, Defendants Teo Su Jin and Jane Doe assisted in managing the operations of Defendant Ginger's when Defendant Benny Cheong was away from the business, typically for vacations.")

**Defendants' Answer ¶99:** Defendants admit the allegations of Paragraph 99 of the Complaint. (SAC ¶99: "On information and belief, at all relevant times, Defendant Benny Cheong reported to Defendant Chef Yu to check on the business, collect the restaurant's cash and receipts, assist with the restaurant's bookkeeping, and assist with the restaurant's operations whenever either Defendants Teo Su Jin or Steven C.J. Tang were unavailable to oversee the restaurant.")

**Defendants' Answer ¶100:** Defendants admit the allegations of Paragraph 100 of the Complaint. (SAC ¶100: "Defendant Alice Tang trained the staff at Defendant Chef Yu, including Plaintiffs Y.M. Lin and R.G. Wu, when it opened in 2006.")

**Defendants' Answer ¶101:** Defendants admit that Chef Yu employed several employees from Gingers as needed. (SAC ¶101: "On information and belief, Defendants transferred several employees from Defendant Ginger's to Defendant Chef Yu, including Defendant Teo Su Jin.")

**Defendants' Answer ¶102:** Defendants admit that Ginger's employed several employees from Chef Yu as needed. (SAC ¶102: "On information and belief, during the relevant time, when Defendant Chef Yu was short on kitchen staff, kitchen staff from Defendant Ginger's were sent to Chef Yu to work at the restaurant.")

**Defendants' Answer ¶105:** Defendants admit that Tung Sheng Yeh, Steven Tang, Teo Su Jin and Benny Cheong have had the power over payroll decisions at either Chef Yu or Ginger's restaurants including the maintenance of all legally required payroll and work hour records and have done so, in good faith, in accordance with the law. Defendants deny that Alice Tang or and or Jane Doe had any such authority. (SAC ¶105: "At all relevant times, Individual Defendants have had the power over payroll decisions at Defendant Restaurants, including the power to retain time and/or wage records.")

**Defendants' Answer ¶106:** Defendants admit that Tung Sheng Yeh, Steven Tang, Teo Su Jin and Benny Cheong were involved in the day to day operations of either Chef Yu or Ginger's Restaurants. Defendants deny that Alice Tang or and/or Jane Doe were involved in the day to day operations of the aforementioned restaurants.

8

> (SAC ¶106: At all relevant times, Individual Defendants were actively involved in managing the day to day operations of all Defendant Restaurants.)

Plaintiffs respectfully request that Defendants' admissions set forth above in its Answer be deemed judicial admissions for trial purposes. As summarized in *Marathon Enters. v. Schroter GmbH & Co.,* 2003 U.S. Dist. LEXIS 2274 (S.D.N.Y. Feb. 13, 2003):

> A party's admissions in its pleadings are binding: 'It is axiomatic that '[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'" *Morse/ Diesel, Inc. v. Fidelity & Deposit Co.,* 763 F. Supp. 28, 32 (S.D.N.Y. 1991) [*11]  (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985)). Courts have specifically found that admissions in a party's answer constitute judicial admissions to which the party is subsequently bound. *See, e.g., W. World Ins. Co. v. Stack Oil Co.,* 922 F.2d 118, 122 (2d Cir. 1990) (binding defendant to admission made in answer for purposes of summary judgment motion); *Bank of Am., N.A. v. Farley,* 2001 U.S. Dist. LEXIS 21676, No. 00 Civ. 9346 (DC), 2002 WL 5586, at *6 (S.D.N.Y. Jan. 2, 2002) (treating admission in defendant's answer as a "formal judicial admission[,] conclusive against defendant in [a] motion for summary judgment" (internal quotations omitted)); *Morse/ Diesel* 763 F. Supp. at 32-33 ("[Defendant] chose to make an admission [in its answer] and is now bound by it.").

*Id.* at *10-11; See also *Censor v. ASC Techs. of Conn., LLC*, 900 F. Supp. 2d 181, 206 (D. Conn. 2012) (binding defendant to factual admission in answer that the parties formed a joint venture) (citing *Stichting Ter Behartiging v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005); *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party are judicial admissions that bind that party throughout the litigation."); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.")). Throughout this litigation, Plaintiffs have relied on Defendants' admissions and not focused discovery as heavily on these matters given that they were admitted by Defendants as true. Defendants responses were also carefully crafted and not a result of error or mistake. For example, many of their responses expressly carve out former individual Defendant Alice Tang, who was subsequently removed as an individual defendant. Defendants' admissions in their answers must

be deemed judicial admissions and therefore deemed true for trial and liability purposes. Many of Defendants' admissions in their answer also mirror facts that were jointly stipulated to by the parties and set forth in the joint pre-trial order.

Dated: New York, New York
September 3, 2019

                         VIRGINIA & AMBINDER, LLP
By:     /s/LaDonna M. Lusher
       LaDonna M. Lusher, Esq.
       Kara S. Miller, Esq.
       Michele A. Moreno, Esq.
       40 Broad Street, Seventh Floor
       New York, New York 10004
       Tel: (212) 943-9080
       Fax: (212) 943-908
       llusher@vandallp.com

       TAKEROOT JUSTICE
       S. Tito Sinha, Esq.
       Farrell A. Brody, Esq.
       Eliseo Cabrera, Esq.
       123 William Street, Sixteenth Floor
       New York, New York 10038
       Tel: (646) 459-3020
       Fax: (212) 533-4598
       tsinha@takerootjustice.org

*Attorneys for the Plaintiffs*